2024 IL App (1st) 232245
No. 1-23-2245B
Opinion filed March 19, 2024

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23500003101 |
| ELIJAH WHITE, | ) ) ) | The Honorable Maryam Ahmad, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    The law presumes defendants are eligible for pretrial release. To rebut this presumption, the State must prove three factors by clear and convincing evidence. Here, the State paid little heed to the procedures under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. The State put on no evidence that pretrial detention was necessary and stood silent as the officer from the Office of Statewide Pretrial Services (Pretrial Services) recommended release. Thus, the State failed to satisfy its burden when seeking to detain Elijah White. We reverse and remand for trial court to impose pretrial release conditions.

Background

¶ 3    Weeks after a deadly car crash, the State petitioned to detain Elijah White, whom it had charged with reckless homicide and a litany of vehicle code violations and petty offenses.

¶ 4    The State's petition consists of a preprinted form that tracks the three elements the State must prove to detain White under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). For the first element, the State checked a box stating, "[t]he proof is evident or presumption great" that White committed reckless homicide (720 ILCS 5/9-3(a) (West 2022)), an offense qualifying for pretrial detention. For the second element, the State checked a box stating that White "poses a real and present threat to the safety of any person or persons or the community" and briefly described the alleged facts and the police's initial investigation. For the third element, a preprinted line asserts, "No condition or communication of conditions set forth in 725 ILCS 5/110-10/(b) can mitigate that risk."

¶ 5    At a hearing on the State's petition, the parties made proffers and called no witnesses. The State alleged that White drove toward a red light while traveling nearly 91 miles per hour, seconds before striking the driver's side of another vehicle. The other driver died hours later. Of the six people in White's five-passenger car, two of them suffered severe injuries. Officers recovered two open bottles of liquor and plastic cups from White's car. A video recording from about an hour before the incident showed White drinking from a plastic cup in which he had apparently poured liquor.

¶ 6    The State also alleged that officers arrested White about two weeks afterward. White gave a "Mirandized" statement (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), admitting driving but denying drinking alcohol or driving at a high rate of speed. White's background contained a

sentence of 24 months of Treatment Alternatives for Safe Communities (TASC) probation that he had completed successfully.

¶ 7 Counsel for White, apparently reading from a police report, alleged that a responding officer had not detected alcohol on White's breath or performed a field sobriety tests after the crash. Counsel noted the road that morning was "wet and slippery" and contained "a visible tire mark," possibly from White's car. White's counsel stated that White was a 23-year-old father of one, whom he co-parented and supported financially through full-time employment. A lifelong Cook County resident, White had also earned a GED and, before the arrest, lived with his grandmother. He had a place to reside if released on electronic monitoring.

¶ 8 An officer from Pretrial Services informed the court that White's "new criminal activity" and "failure to appear" scores were two of six, and Pretrial Services recommended release with pretrial monitoring, not detention.

¶ 9 The trial court heard arguments focusing on the second and third factors that the State needed to prove.

¶ 10 The State argued, for the second factor, that White posed a real and present threat because he drank alcohol "shortly before driving and then traveling at such a high rate of speed that he crashed, causing the death of a driver who had the green light at the time." (Likewise, in rebuttal, the State stressed that White was "a danger to the community," given the alleged facts.) For the third factor, the State argued, "Your Honor, it is the State's position that no conditions or combination of conditions can mitigate the risk that the defendant poses."

¶ 11 White's counsel argued that, under the second factor, White was not a real and present threat because the State had not charged him with driving under the influence and offered no evidence of prior "cases of negligent driving," a "suspended license," or "anything of that nature."

For the third factor, counsel noted that no proffered evidence suggested White had obstructed the investigation, fled the scene, or tried to persuade witnesses not to cooperate. Also, no proffered facts specified alcohol present "in the driver console's area."

¶ 12　The trial court granted the State's petition, first finding the proof was evident or the presumption great that White committed reckless homicide, a detainable offense, and characterized the allegations as "outrageous." For the second factor, the trial court found White was "not only *** a threat, but he is an actual risk to persons in the community because he severely injured two people who were in the vehicle with him, and he killed another."

¶ 13　For the third factor, the trial court prefaced its analysis by noting that "[the] question is more complicated."

> "It is whether any factors can mitigate the risk to the community. Defendant has a prior felony charge which is not a conviction because it was TASC probation and it was completed satisfactorily. Defendant works. He has a child. He lives with his grandmother. He has a GED. So the Court must balance these attributes including a very low public safety assessment.
>
> New criminal activity scale is a two and the failure to appear scale is a two. The Court must balance that with whether or not any conditions can mitigate the risk to the public, and the Court must determine whether based on these allegations the defendant will return to face the charges.
>
> The Court believes because, as [counsel for White] pointed out, even after law enforcement had contact with defendant, defendant did return—defendant did not run, rather. Did not flee the jurisdiction facing this very serious charge.

However, because of the nature of this case because I have a decedent and two severely injured people, the Court is unwilling to take the risk of any violations."

¶ 14 The trial court entered a written order summarizing its oral pronouncement. For the second factor, the trial court wrote that White "recklessly drove a car killing one person and severely injuring [two] others." "Severely" was capitalized and underlined. For the third factor, the trial court wrote, "Due to lack of concern and judgment for the safety of others[,] this Court cannot risk the release of [White] at this time."

¶ 15 White appealed, and his notice attached a document, titled "Grounds for Relief." He raised two contentions focusing on the third factor. First, the State failed to satisfy its burden to prove that no condition or combination of conditions could mitigate White's real and present threat to community safety. And second, the trial court erred by finding no conditions would reasonably ensure White's appearance or prevent him from being charged with a subsequent offense.

¶ 16                                   Analysis

¶ 17 White seeks pretrial release with conditions, raising two claims: (i) based on the specific, articulable facts of the case, the State failed to prove the real and present threat to the safety of persons or the community, and (ii) the State failed to prove the third factor regarding the absence of any conditions that could "mitigate the real and present threat to the community." We agree with White's contention on the third factor and focus on that claim.

¶ 18 Illinois law now presumes defendants are eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022); *id.* § 110-6.1(e). The State may detain an accused only by charging an offense eligible for detention and then proving: (i) the proof is evident or the presumption great that the defendant committed the detention-eligible offense, (ii) the defendant poses a real and present threat to the safety of persons or the community based on the specific articulable facts of the case,

and (iii) no condition or combination of conditions can mitigate that real and present threat. *Id.* § 110-6.1(e). The State must prove not one, not two, but all three factors by clear and convincing evidence. See *id.*

¶ 19 Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. If the State does not meet its burden on any one factor, the presumption of release controls and pretrial detention is unlawful. See 725 ILCS 5/110-6.1(e) (West 2022).

¶ 20 White contends that, far from satisfying its burden of proof on the third factor, the State parroted the language of the statute by asserting, "[N]o conditions or combination of conditions can mitigate the risk that [White] poses." The State does not entirely dispute this. Citing the Code, the State first counters that it need only "allege" that " 'no combination or combinations set forth' within the [Code] *** could mitigate" White's alleged threat or possible flight. See *id.* Alternatively, the State contends the trial court properly considered and rejected White's argument for pretrial release because it found the alleged facts "outrageous," showing White's "lack of concern and judgment for the safety of others."

¶ 21 These contentions call for distinct standards of review. We analyze legal questions *de novo*. *People v. Ramirez*, 2023 IL 128123, ¶ 13. Under a *de novo* standard, we reject as contrary to the plain language of the Code the State's contention that it need only "allege" that " 'no combination or combinations set forth' within the [Code] *** could mitigate" White's alleged threat or possible flight. See *id.* (applying *de novo* review). Under the Code,

"the State shall bear the burden of proving by clear and convincing evidence that:

\* \* \*

> (3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case \*\*\*, or (ii) the defendant's willful flight[.]" 725 ILCS 5/110-6.1(e)(3) (West 2022).

Thus, the Code mandates that the State satisfy its burden of proof. The State's contention otherwise—that reciting the language of the Code or alleging it has carried this burden—is beyond the language and intention of the Code and meritless. The State must prove this factor as it must prove the other factors. Failing that, "defendants shall be presumed eligible for pretrial release." *Id.* § 110-6.1(e).

¶ 22 Next, the parties' contentions about whether the State met its burden to prove the third factor requires us, initially, to recognize an unsettled question of law—the standard of review. Panels have applied the abuse of discretion standard, the manifest weight of the evidence standard, or a "twofold" approach with "manifest weight of the evidence" used for review of factual findings and abuse of discretion used for review of the ultimate determination for pretrial release. See *People v. Romero*, 2024 IL App (1st) 232023-U, ¶¶ 31-32 (discussing various standards applied by panels). Still another variation adopts an independent *de novo* review with findings of historical fact reviewed for manifest error. *E.g.*, *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 80-82 (Ellis, J., specially concurring). We need not enter this debate, however. Our decision would be the same under any of these standards.

¶ 23 We reject the State's contention that its "proffered facts were sufficient to justify the trial court's denial of pretrial release" and "no set of conditions could mitigate the risk of [White's] threat to the community." The State's analysis ignores swaths of the record. Nowhere in the State's

argument does it acknowledge: (i) Pretrial Service's recommendation that White be released on pretrial monitoring or (ii) the parties' proffers regarding White's weekslong contact and cooperation with the investigation, including on-scene questioning and a later Mirandized interview. Instead, the State focuses on the trial court's oral pronouncement describing the alleged crime as "outrageous" and its written order questioning White's "lack of concern and judgment for the safety of others."

¶ 24    Legal conclusions must rest on proffered facts or other competent evidence. See 725 ILCS 5/110-6.1(f) (West 2022) ("Conduct of the hearings"); *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 17-18 (State failed to produce evidence relevant to third factor). Pertinent here, section 110-10(a) establishes mandatory conditions for defendants released before trial. See 725 ILCS 5/110-10(a) (West 2022). Next, Section 110-10(b) provides discretionary conditions, including (i) "direct supervision of the Pretrial Services Agency, Probation Department or Court Services Department in a pretrial home supervision capacity with or without the use of an approved electronic monitoring" and (ii) for certain offenses, a prohibition "from operating a motor vehicle not equipped with an ignition interlock device." *Id.* § 110-10(b)(5), (6). Section 110-10(b) also broadly authorizes courts to impose "other reasonable conditions" if those conditions are individualized and the least restrictive means possible to ensure defendant's appearance in court and compliance with pretrial release rules, court procedures, and criminal statutes. *Id.* § 110-10(b)(9).

¶ 25    A review of the record verifies that the State presented no evidence relevant to this third factor and sections 110-10(a) and (b). Indeed, the State never discussed this portion of the Code, despite repeating the language in section 110-6.1(e)(3) to allege to the trial court that "no condition or combination of conditions" could mitigate White's alleged threat or possible flight. See *id.* § 110-6.1(e)(3).

¶ 26    On appeal, the State again overlooks its statutory burden yet concludes, "there is no way to ensure defendant would not drive or perform some other common activity in a reckless, or unsafe manner." But the Code demands proffered facts or other competent evidence. See *id.* § 110-6.1(f) ("Conduct of the hearings").

¶ 27    The facts of the alleged offense are tragic. Yet the issue before us is whether the State carried its burden to detain White before trial. Having effectively ignored the third factor, the State has failed to bear its burden as it must. Indeed, the parties' proffered facts, which describe White's ongoing cooperation with the investigation, support the conclusion of Pretrial Services to release White on pretrial monitoring.

¶ 28                                Conclusion

¶ 29    On remand, the trial court must order White's pretrial release with conditions imposed after carefully considering evidence pertinent to sections 110-6.1(e)(3) and 110-10(a) and (b) of the Code.

¶ 30    Reversed and remanded with directions.

---

*People v. White*, 2024 IL App (1st) 232245

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23500003101; the Hon. Maryam Ahmad, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Tai Martin, Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Amy McGowan, Assistant State's Attorney, of counsel), for the People. |

---