NOTICE

Decision filed 05/31/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240367-U

NO. 5-24-0367

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 24-CF-218 |
| | ) | |
| JOSEPH D. HOOSIER, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's order granting the State's petition to deny pretrial release is affirmed where the trial court's findings were not against the manifest weight of the evidence and the order denying pretrial release was not an abuse of discretion.

¶ 2 Defendant appeals the trial court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm the trial court's order.

¶ 3 I. BACKGROUND

¶ 4 On February 16, 2024, defendant was charged, by information, with aggravated battery with a firearm, a Class X felony, in violation of section 12-3.05(e)(1) of the Criminal Code of 2012

1

(720 ILCS 5/12-3.05(e)(1) (West 2022)) and conspiracy to commit robbery, a Class 3 felony, in violation of sections 18-1(a) and 8-2(a) (*id.* §§ 18-1(a), 8-2(a)). A warrant for his arrest was entered the same day. Defendant was arrested on February 27, 2024. On February 28, 2024, defendant was charged, by information, with a third count of unlawful possession of a weapon by a felon, a Class 2 felony, in violation of section 24-1.1(a) (*id.* § 24-1.1(a)). The same day the State filed a petition to deny defendant's pretrial release.

¶ 5     A pretrial investigation report was filed on February 28, 2024. The report indicated that defendant was 46 years old and lived in Champaign, Illinois, for 10 years with his girlfriend. Prior to that he lived in Chicago, Illinois. He was the father of one child, who was now 29 years old. He was unemployed but stated that he had an interview at Walmart that day for a stocking position working third shift. No drug or mental health issues were listed.

¶ 6     Defendant's criminal history included convictions in Illinois for unlawful possession of cannabis by a passenger, leaving the scene of an accident, forgery, manufacture, and delivery of cannabis 10-30 grams, possession of a controlled substance, manufacture, and delivery of cocaine 30-100 grams, and unlawful possession of a firearm. He also had convictions in Missouri for operating a motor vehicle without a license, DWI, distribution of a controlled substance, leaving the scene of an accident, driving while license suspended, and driving with license revoked. The Virginia Pretrial Risk Assessment Revised (VPRAI-R) classified defendant as a 4 out of 14 on the scale that equated to a level 2 (out of 6) or 9.8% risk for recidivism if released pretrial.

¶ 7     The trial court proceeded on the State's petition on February 29, 2024. The State proffered that the victim resided out of state where he had a legal cannabis dispensary business. The victim travelled to Champaign for business and to visit his adult children. On December 22, 2023, the victim met with an individual who suggested he provide samples of his cannabis business and

there was a brief telephone conversation. The victim indicated that he was not interested and thought the matter was done. During that contact, the victim indicated that he was going to the car wash in Mahomet and individuals, including defendant, knew he was travelling with cannabis and/or cash.

¶ 8 Based on video obtained by the police, defendant and two other individuals appeared as if they were getting ready to "close in" on the victim at the car wash. Defendant and his codefendants approached the victim and grabbed him from behind. The victim struggled. Defendant was in possession of a handgun. The victim managed to get free and tried to get in his vehicle when defendant shot the victim twice in the side. Two .45-caliber shell casings were found at the scene. The victim was able to get to his car, flee, and call his daughter, who took him to the hospital. The hospital called the police.

¶ 9 Defendant is later seen on video walking in an outdoor supply store next to a retail area and possessing a handgun consistent with that described by the victim. He concealed the handgun under some stacked materials before noticing a camera. He then turned around and recovered the firearm. Two other witnesses provided statements consistent with that of the victim. The victim was provided a blind array of photographs and immediately named defendant as the shooter. Two vehicles driven by the alleged co-conspirators were later located by police and those people were interviewed by police. One of the alleged co-conspirators denied being in Mahomet. The other admitted he was there to meet the victim with defendant and that he remained in the car. He indicated that he knew there was a deal discussed but did not know it would involve a shooting. The first co-conspirator eventually admitted that the other co-conspirator's account was accurate and affirmatively stated he was not the shooter "but if he told what his intent was it would make things worse for him." He stated that he rode alone to the meeting place and later met up with

3

defendant and the other co-conspirator. The State proffered that the car wash video was reviewed either the same day or shortly thereafter and the license plates of the vehicles driven by the alleged assailants were seen in the video.

¶ 10    Defense counsel proffered that defendant lived in Champaign for the last 10 years with his fiancée. She recently underwent surgery and required additional surgery on her knee. Defendant was helping her greatly with her recovery and her physical needs. Defendant was not currently employed but had a job interview at Walmart and, despite missing the interview, received a call back for employment. He also received a call back from Meijer for employment, indicating he had employment opportunities. Counsel stated it would not minimize defendant's criminal history but stated the most significant brush with the law in the last four years was a forgery case.

¶ 11    The State argued about the seriousness of the offense and the evidence revealing defendant was involved in the conspiracy to commit the crime and was a danger in that regard not only to the victim, but to anybody in the community. The State argued that defendant had six prior felonies and four Illinois Department of Corrections sentences. The State further argued that the only reason defendant only had one felony in the last 10 years was because defendant was in prison for 15 years, so he did not have the opportunity to commit more felonies during that period. The State noted that drugs were involved, and defendant had five prior convictions involving drugs including four felonies and one DUI involving drugs. The State also noted defendant's previous conviction for possession of a firearm. The State argued that defendant was dangerous and asked that pretrial release be denied.

¶ 12    Defense counsel proffered that the evidence was "quite a bit more attenuated" than argued by the State. He stated that defendant was not identified in the video. While both co-conspirators stated they were not the shooter, counsel was unaware as to whether only one or both indicated

4

defendant was the shooter. He said there was video from the car wash and the supply store, but the length of time between the videos was unknown and it was unclear if defendant was wearing the same clothes. He stated the evidence was not clear and convincing. Counsel further acknowledged defendant's lengthy criminal record but stated he was released in 2014 and other than the forgery case in 2018, there was nothing to be seen. Counsel stated defendant was a longtime resident of the area, had job prospects available, and a fiancée who depended on him. He was willing to agree to home confinement, GPS, or whatever the court ordered, but should be released with pretrial conditions.

¶ 13    The court addressed the proffers and noted that the victim identified defendant as the shooter, there was video from both the car wash and the supply store, and defendant was a felon. Therefore, it found that the State proved, by clear and convincing evidence, that defendant committed a qualifying offense, namely counts I and III, involving aggravated battery with a firearm and unlawful possession of a weapon by a felon. The court also addressed whether defendant posed a real and present threat to any person or the community. It did not find that defendant was a threat to the victim but did find he was a threat to the community. The court recognized that defendant had been in Champaign for 10 years and was helping his fiancée following her surgery. It further noted that defendant's criminal history was in the past, but it could not be ignored, noting that defendant had eight felony convictions and six prior prison sentences. It noted that the prior possession of a weapon felony resulted in a probation sentence that went unsatisfied. Defendant's criminal convictions included a 15-year sentence for a drug charge, and he was released around 2015. Thereafter, he had a nonviolent forgery charge in 2018 and a possession of cannabis charge from 2020 for which he received probation, but that probation was not satisfied either. The court continued stating:

"Now with that record and that experience with both community-based sentences, a felony conviction based solely on his possession alone of a firearm. The experience he's had serving multiple prison sentences, the pretrial risk assessment score of 4 grossly understates what's happening here. What's happened is a person who has been through a lot in life and has had opportunity after opportunity that ought to have been providing deterrence to commit an offense is now in possession of a firearm, participates in an attempt robbery, and during that shoots the Mr.—the alleged victim, *** in the side, aggravated discharge of the firearm and then tries to hide the weapon, sees the camera and realizes that that hiding place won't work, retrieves it, has chosen another one, and the firearm's gone. The court's considered and rejected GPS monitoring too. That's not doing it. The State's proven by clear and convincing evidence that there's no condition or combination of conditions that can mitigate the real and present threat that Mr. Hoosier poses to community safety. The State's request for pretrial detention is granted."

¶ 14 Following the hearing, the trial court issued an order finding defendant committed a detainable offense. In support, the order stated,

"On December 22, 2023, the alleged victim mentioned during conversation that he operates a legal cannabis dispensary and was traveling to a car wash in Mahomet. When he arrived there, video showed other vehicles arrive and park in several different areas, as if having followed him and targeting him. That video, supported by witnesses, showed individuals including defendant Mr. Hoosier approach the victim and grab him from behind, the victim struggle[d] and get[s] free and Mr. Hoosier shoots the victim in the side with a firearm. Later that same day video at a supply store showed Mr. Hoosier pull a handgun and hide it under stacked materials then sees the camera and retrieve[s] the gun and leave[s]. The

6

victim immediately picked out Mr. Hoosier in a blind photo array as the person who shot him[,] and the two co-defendants admitted that defendant was present at the shooting but neither of them was the shooter. Mr. Hoosier is a convicted felon as alleged."

¶ 15    The trial court's order also found defendant posed a real and present threat and no condition or combination of conditions could mitigate defendant's dangerousness. In support, the order stated,

"Mr. Hoosier has eight felony convictions between Illinois and Missouri including six prison sentences and a prior gun felony, for which he received Probation/Boot Camp that was terminated unsatisfied. From 1999-2002 he had a series of three drug felonies and was sent to prison for each, then had a significant period of time with no convictions. But then in 2018 he was convicted of Forgery (3), in that same year he received a disposition for Leaving the Scene (A), and in 2020 he received Court Supervision for a Class A cannabis charge that was terminated unsatisfied. With all of that experience with the criminal justice system and serious consequences, the State now has clear and convincing evidence, supported by video, that Mr. Hoosier conspired with others to rob a cannabis dispensary owner, armed himself with a firearm he could not lawfully possess, shot the victim in the course of the robbery, then took action to hide the gun, which still has not been found. He has strong ties to the community, work prospects, ongoing medical needs, and a low risk assessment score, but a long history of serious deterrent measures have not worked[,] and the risk assessment fails to properly account for the nature of that history and the specific facts of the currently charged crimes. No conditions of release can mitigate the real and present threat Mr. Hoosier poses to community safety."

7

Defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).[1]

¶ 16                                    II. ANALYSIS

¶ 17    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 18    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to

---

[1]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before May 28, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 19    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 20    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " ' A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see also *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing

the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 21    Defendant's notice of appeal requests reversal of the trial court's order denying him pretrial release. The notice of appeal provided additional language under each of the eight potential issues that could be raised in the standard notice of appeal form.[2] Of those eight, three contained "checked" boxes next to the issue. The "checked" issues included: (1) whether the State failed to meet its burden of proving that the proof was evident or the presumption great that defendant committed the qualifying offense charged; (2) whether the State failed to meet its burden of showing defendant posed a real and present threat to the safety of any person(s) or the community; and (3) whether the State failed to meet its burden of proving that no condition or combination of conditions could mitigate defendant's dangerousness. None of the typewritten language underneath each checked issue contained argument specific to this case and instead merely provided language related to the burden of proof required for each issue.

¶ 22    On April 22, 2024, defendant's counsel on appeal, the Office of the State Appellate Defender (OSAD), filed a Rule 604(h) memorandum. The memorandum addressed only the last two issues "checked" by defendant in his notice of appeal. No argument was presented as to the first issue that addressed whether the proof was evident or the presumption great that defendant committed the offenses charged.

---

[2]This court previously addressed this situation. See *People v. Davis*, 2024 IL App (5th) 240120, ¶¶ 18-26. We again remind trial counsel of the ethical obligations regarding frivolous appeals and the failure to properly delineate the issues for consideration on appeal.

¶ 23 The State filed a Rule 604(h) memorandum on May 10, 2024. Therein, the State ignores our standard of review (see *People v. Burke*, 2024 IL App (5th) 231167, ¶ 20) and instead claims our review is solely limited to determining whether the trial court's order denying pretrial release was an abuse of discretion. As such, the memorandum is largely irrelevant.

¶ 24 As noted above, defendant's notice of appeal contained three issues for consideration, but OSAD's Rule 604(h)(2) memorandum only addressed two of those issues. In *Forthenberry*, this court held that when a supporting Rule 604(h) memorandum is filed, it becomes "the controlling document for issues or claims on appeal" and the notice of appeal would not be used to "seek out further arguments not raised in the memorandum" unless jurisdiction was raised as an issue. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42. Other appellate districts have also adopted this holding. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22; *People v. Martin*, 2024 IL App (4th) 231512-U, ¶ 59. Here, OSAD's memorandum contains no argument for the first issue raised by defendant in his notice of appeal. Accordingly, we hold that the first issue, initially raised by defendant in his notice of appeal, was abandoned by his appellate counsel. *Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 42-44. As such this court is left with two issues to consider: (1) whether the State proved, by clear and convincing evidence, that defendant posed a real and present threat to the safety of any person(s) or the community; and (2) whether the State proved, by clear and convincing evidence, that no condition, or combination of conditions, could mitigate defendant's real and present threat to the safety of any person(s) or the community.

¶ 25 OSAD argues that the State failed to prove that defendant posed a danger to any person(s) or the community beyond relying on defendant's current charges. We disagree. Each decision must be based on its own articulable facts. See 725 ILCS 5/110-6.1(h)(1) (West 2022). Typically, when considering the sufficiency of the evidence, "the reviewing court must view the evidence 'in the

light most favorable to the prosecution.' " *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Id.* In this case, the question becomes, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found' " (emphasis in original) (*id.* at 278 (quoting *Jackson*, 443 U.S. at 319)) that the State proved by clear and convincing evidence that defendant posed a real and present threat to any person(s) or the community.

¶ 26    As noted above, the statute provides factors for the trial court's consideration in determining dangerousness. Included in those factors are the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense." 725 ILCS 5/110-6.1(g)(1) (West 2022). Here, it is undisputed that one of the offenses charged involved a crime of violence and the other involved a weapon. The second factor involves defendant's history and characteristics. *Id.* § 110-6.1(g)(2). This includes defendant's prior criminal and social history that may reveal a potential of violence. Here, the State presented argument about defendant's prior criminal history and noted that history included a crime involving a weapon. The State also noted that defendant had six prior felony convictions in Illinois and served prison sentences related to those felonies. Under these articulable facts, we find that the State presented sufficient clear and convincing evidence that defendant posed a danger to the community. Accordingly, we hold that the trial court's finding of dangerousness was not against the manifest weight of the evidence.

¶ 27    OSAD's second issue involves the State's obligation to show that no condition, or combination of conditions, would mitigate defendant's dangerousness. It first argues that the State failed to prove, by clear and convincing evidence, that no condition, or combination of conditions,

12

would mitigate defendant's dangerousness. Citing *People v. White*, 2024 IL App (1st) 232245, ¶ 26, OSAD argues that the "State never argued that available conditions of release were insufficient" and contends the State was required to provide proffered facts or other competent evidence on the issue.

¶ 28 Again, the issue is one of evidentiary sufficiency. The question thus becomes, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found' " (emphasis in original) (*Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson*, 443 U.S. at 319)) that the State proved by clear and convincing evidence that no condition, or combination of conditions, would mitigate defendant's dangerousness.

¶ 29 As stated above, in determining which conditions of pretrial release, if any, would reasonably ensure the appearance of the defendant, the safety of persons and the community, and the likelihood of defendant's compliance with terms of pretrial release, the statute provides factors for the trial court's consideration. See 725 ILCS 5/110-5(a) (West 2022). These include *inter alia* (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community based on the articulable facts of the case that would be posed by the defendant's release. *Id.* Many of these are similar to those listed in section 110-6.1(g) that address a defendant's dangerousness. See *id.* § 110-6.1(g). Contrary to OSAD's claim, the State presented evidence on this issue when it presented evidence on the overlapping factors.

¶ 30 Here, the State contended that no condition, or combination of conditions, existed that would mitigate defendant's dangerousness. This statement was presented immediately after the State addressed the current charges, defendant's prior criminal history that included a charge

13

similar to that currently pending, and his inability to comply with previously issued restrictions, notably his possession of a firearm despite his status as a felon. The conditions of release found in section 110-10 (*id.* § 110-10) are based on a defendant's compliance with court-ordered conditions. Given that defendant's history reveals an admitted failure to comply with statutory conditions related to firearm possession, we cannot find that the State failed to prove, by clear and convincing evidence, that no condition or combination of conditions would mitigate defendant's dangerousness.

¶ 31    OSAD further argues that, "if the court was concerned about [defendant] possessing a gun while on pretrial release, the court could have ordered that [defendant] surrender any guns in his possession and refrain from possessing any guns while on pretrial release." OSAD further argues that "there was no evidence at the hearing that [defendant] had ever violated similar conditions in the past."

¶ 32    We again disagree. Here, there was ample evidence before the court to reasonably infer, based on both the proffer and argument presented by the State, that no conditions, or combination of conditions, would mitigate defendant's dangerousness to the community. The court could reasonably infer that defendant would not refrain from possessing a firearm or other dangerous weapon when defendant's history and the current charges confirmed that he previously ignored, and continued to ignore, said prohibition. While OSAD argues that defendant "successfully completed multiple terms of mandatory supervised release and a term of conditional discharge," the record reveals that at least two of defendant's prior convictions, including one for possession of a weapon, were "unsatisfactorily terminated." Contrary to OSAD's claim, we disagree that the record fails to support the trial court's conclusion that defendant would not comply with conditions of release. As noted by the trial court, defendant had "experience with the criminal justice system

14

and serious consequences" related to his prior offenses, yet he continued to engage in actions that could result in an additional prison sentences, therefore undermining any inference that pretrial conditions, or combination of conditions, would mitigate defendant's dangerousness. Accordingly, we find that the State's proffer was sufficient to provide clear and convincing evidence that no condition, or combination of conditions, would mitigate defendant's dangerousness.

¶ 33    Based on the evidence presented, we cannot hold that the court's finding that defendant posed a real and present threat to the community and no condition, or combination of conditions, would mitigate defendant's dangerousness to the community was against the manifest weight of the evidence or its decision to revoke pretrial release was an abuse of discretion.

¶ 34                                 III. CONCLUSION

¶ 35    For the reasons stated herein, the trial court findings were not against the manifest weight of the evidence and its ultimate disposition was not an abuse of discretion. Therefore, we affirm the trial court's order.


¶ 36    Affirmed.