2024 IL App (1st) 240312-U

No. 1-24-0312B

Order filed June 7, 2024

Fifth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 92301 |
| | ) | |
| DAVID BYNUM, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court did not abuse its discretion in ordering defendant detained while awaiting trial.

¶ 2   Defendant David Bynum was charged with first-degree murder and denied bail. Thereafter, Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act), became effective and amended Article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)). Due to the Act, Bynum filed a petition for pretrial release, and the State filed its own verified petition for pretrial detention. Following a hearing, the

circuit court ordered Bynum detained while awaiting trial. Bynum now appeals the detention order and contends that the court erred by detaining him while awaiting trial. For the reasons that follow, we affirm the court's detention order.

¶ 3                                  I. BACKGROUND

¶ 4      In July 2023, Bynum was arrested and charged with first-degree murder for allegedly pushing his wife down a flight of stairs and killing her. Following a bond hearing, the circuit court held him on no bail and denied him pretrial release. Two months later, the Act became effective. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52.

¶ 5      On February 1, 2024, Bynum filed a petition to grant pretrial release pursuant to the Act, asserting that pretrial release conditions such as electronic monitoring, GPS monitoring or home confinement would mitigate any concerns the circuit court had about his threat to the safety of the community. The same day, the State filed a verified petition for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), asserting that Bynum was a danger to the community. In the petition, the State posited that no condition or combination of conditions of release could mitigate that risk. The State's petition included an attachment that detailed the specifics of the alleged first-degree murder, Bynum's criminal history, and other instances of alleged violence he committed against the victim and one of their children.

¶ 6      The circuit court subsequently held a detention hearing, where the State proffered that, on the evening of June 28, 2023, Bynum and the victim had been arguing. When Bynum refused to leave their residence after the victim's request, she called her sister to come help. At around 2 a.m., Bynum and the victim were outside their residence arguing while their two children and one of their children's friends observed the argument from inside the residence. The children saw the victim "reach[] toward" Bynum, and Bynum subsequently "shove" her down concrete stairs. One

of the children observed Bynum use both of his hands. The couple's children ran to the landing of the stairs and observed that the victim was unresponsive. When officers arrived at the scene, they did not observe any injuries to Bynum. Following the incident, the children and the victim's sister were interviewed about their observations. According to a recorded statement from the victim's sister, there was nothing that the victim could have tripped over to fall down the stairs by herself. Two days later, the victim died, and her cause of death was blunt force trauma due to assault.

¶ 7    The State asserted that Bynum had a lengthy criminal history, including a 2003 conviction for possession of a controlled substance for which he was sentenced to 30 months' imprisonment, a 2007 conviction for resisting a peace officer for which he was sentenced to 15 months' imprisonment, a 2009 conviction for aggravated robbery and aggravated discharge of a firearm for which he was sentenced to 4.5 years' imprisonment, and a 2015 conviction for unlawful use of a weapon by a felon for which he received a sentence of 6 years' imprisonment. The State also noted that there had been 10 documented police calls involving Bynum and the victim between 2020 and 2022, several of which involved Bynum allegedly committing acts of violence toward her. The State further observed that, during the interview of the couple's 14-year-old daughter, she reported that Bynum had previously been violent toward her on multiple occasions. Ultimately, the State contended that the proof was evident, or the presumption great, Bynum committed first-degree murder, and he posed a real and present threat to the safety of the community.

¶ 8    In response, Bynum's defense counsel asserted that the victim had been drinking heavily the night of her fall due to the passing of her cousin and she was upset with him for not being more sympathetic. According to counsel, the victim's blood-alcohol concentration that night was 0.24. After the victim told him to leave the residence, Bynum called a taxi and packed his belongings. As Bynum was waiting in front of the residence, the victim came out and confronted him about

allegedly taking some of her belongings. The victim began to physically accost him, including pulling out one of his dreadlocks. Counsel disagreed that Bynum did not have any injuries and noted that the police inventoried a dreadlock and a dreadlock could be seen missing from his head in a photograph. Later, when Bynum and the victim were by the concrete stairs, she began pushing him. After Bynum regained his balance, the victim backpedaled away from him and accidentally fell down the stairs. Bynum rushed to the victim's aid, and an ambulance was called.

¶ 9     Defense counsel posited that there was various evidence contradicting the State's proffer of an alleged murder. For one, counsel highlighted that medical records reflected the family telling medical personnel that the victim fell down the stairs. Additionally, based on video from the responding officers' body-worn cameras, the blinds of the window near the stairs were down resulting in a view of the stairs being obstructed. Further, according to counsel, the victim's sister initially told medical personnel that Bynum had been punching the victim, but medical personnel told the police that they did not observe any evidence of Bynum punching the victim. Counsel also pointed out various inconsistencies from the interviews of the children such that counsel theorized they did not even observe the moment when the victim fell down the stairs.

¶ 10     Concerning the allegations of violence raised by the couple's daughter, defense counsel asserted that they were never reported to the police. Counsel also noted that, despite several calls to the police by the victim, only one incident resulted in Bynum being arrested and charged. The charge was for criminal damage to property, and the case was later dismissed. In addition, counsel observed that Bynum had never been arrested for domestic battery or assault, which was in contrast to the victim's own criminal history. According to counsel, she was a convicted felon and had been arrested for multiple batteries, including domestic battery. Lastly, counsel discussed various alleged mitigating evidence, including Bynum's employment prior to his arrest for murder.

Ultimately, counsel contended that the State failed to show the proof was evident, or the presumption great, Bynum committed first-degree murder and failed to show he was a danger to any identifiable individual or the community at large. Counsel also concluded that there were conditions of pretrial release that would mitigate any concerns the circuit court had, including electronic monitoring or GPS monitoring.

¶ 11 Following the parties' arguments, the circuit court orally found the proof was evident that Bynum committed first-degree murder, and he posed a real and present threat to the safety of the community given his extensive criminal history and the apparent animosity between him and members of his family. Additionally, the court concluded that no condition or combinations of conditions of pretrial release could mitigate that threat because of his lengthy criminal history, including multiple periods of incarceration. The court observed that his previous incarcerations for "serious felony convictions" were "pretty strong evidence" that there were not conditions of release that could mitigate the risk he posed. Specifically regarding electronic monitoring, the court asserted that Bynum could easily remove the device and be a danger to the community. Consequently, the court orally ordered Bynum to be detained while awaiting trial.

¶ 12 In the circuit court's written order, it found that the proof was evident, or the presumption great, Bynum committed first-degree murder. The court also found that he posed a real and present threat to the safety of the community because of the alleged acts of violence between him and the victim, the animosity between him and members of his family, and his history of violent offenses. Lastly, the court concluded no condition or combination of conditions could mitigate the real and present threat that Bynum posed because he has been in prison previously for serious offenses, which did not deter his alleged behavior in the present case. The court therefore ordered Bynum detained while awaiting trial.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    Bynum contends that the circuit court erred in concluding the State had met its burden of proving all three elements necessary to detain him pretrial under the Act: (1) that the proof was evident, or the presumption great, he committed an eligible offense; (2) that he posed a real and present threat to the community or a specific person; and (3) that no condition or combination of conditions could mitigate the real and present threat he posed. See 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 16    In the instant case, Bynum was arrested in July 2023 for first-degree murder, which was before the September 18, 2023, effective date of the Act (see *Rowe*, 2023 IL 129248, ¶ 52) and has been in custody ever since. Under these circumstances, Bynum had the option to remain in pretrial detention or file a petition to reconsider. See *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶ 14. Bynum chose the latter, triggering section 110-7.5(b)(1) of the Code (725 ILCS 5/110-7.5(b)(1) (West 2022)). Under that section, individuals, like Bynum, who were previously held on no bail and detained pretrial before the Act became effective and had been charged with certain offenses, including first-degree murder, must be given a hearing within 90 days of filing a "motion for reconsideration of pretrial release conditions," *i.e.*, the petition to grant pretrial release that Bynum filed. *Id.* Section 110-7.5(b)(1) of the Code, in turn, references a hearing proceeding under section 110-6.1 of the Code (*id.* § 110-6.1). Although under that section, the court may only deny a defendant pretrial release upon a verified petition by the State (*id.* § 110-6.1(a)), the State filed one in the instant case in response to Bynum's petition for reconsideration, which was proper. See *Kurzeja*, 2023 IL App (3d) 230434, ¶ 14.

¶ 17   Turning to the pretrial detention hearing under section 110-6.1 of the Code, before conducting such a hearing, all defendants begin with the presumption that they are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). As relevant to Bynum, in order to continue his pretrial detention, the State "bear[ed] the burden of proving by clear and convincing evidence" three elements. *Id.* First, the State had to show "the proof [was] evident or the presumption great" that Bynum committed first-degree murder, which is an eligible offense under the Act. *Id.* § 110-6.1(a), (e)(1). Second, the State had to show that he "pose[d] a real and present threat to the safety" of the community or any specific person based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(2). Third, the State had to show that "no condition or combination of conditions *** [could] mitigate *** the real and present threat to the safety" of the community or any specific person based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(3).

¶ 18   We review the circuit court's determinations on whether the State met its burden on these three elements under the manifest-weight standard. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, the court's ultimate decision to detain a defendant pretrial is reviewed for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. "An abuse of discretion occurs where the [circuit] court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the [circuit] court." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 19   As to the first element, the State proffered that Bynum intentionally pushed the victim down concrete stairs based on the observations of multiple witnesses, including his own children, and committed first-degree murder, an offense detainable under the Act. See 725 ILCS 5/110-

6.1(a)(1.5) (West 2022). The State supported its proffer with evidence that Bynum previously committed acts of violence against the victim. It is true that Bynum's defense counsel highlighted the victim's significant blood-alcohol concentration and evidence that was inconsistent with the State's theory of first-degree murder. But given that the State's proffer credibly showed that Bynum intentionally pushed the victim down the stairs, which was corroborated by evidence he had been violent toward her in the past, the court's finding that the State met its burden to show the proof was evident, or the presumption great, that Bynum committed first-degree murder was reasonable and based on the evidence presented. See *People v. Reed*, 2023 IL App (1st) 231834, ¶ 25 (observing that, even though the defendant may have a defense at trial to the charged offense, that does not necessarily negate the State's showing). Consequently, the court did not commit manifest with its finding on the first element.

¶ 20    Turning to the second element, given the allegations of the instant case, Bynum's alleged acts of violence toward the victim and his daughter in the past, and his lengthy criminal history, which included convictions for aggravated discharge of a firearm, resisting a peace officer and another weapons-related offense, the State demonstrated that Bynum is a real and present threat to the safety of the community and his family. See 725 ILCS 5/110-6.1(g)(1), (2) (West 2022) (providing that, in determining whether the defendant is a danger to the community or a specific person, the circuit court may consider "[t]he nature and circumstances of any offense charged" and "[t]he history and characteristics of the defendant"). Given this, the court's finding that he was a real and present threat to the safety of the community and his family was reasonable and based on the evidence presented. See *People v. Boyd*, 2024 IL App (1st) 240202-U, ¶ 20 (finding "the State undoubtedly demonstrated that [the defendant was] a clear danger to the community" based on the allegations underlying his first-degree murder charge and his criminal background, which

consisted of violent offenses involving firearms).[1] Consequently, the court did not commit manifest with its finding on the second element.

¶ 21    Lastly, we turn to the third element, where Bynum argues that the State did not present any evidence that pretrial release conditions would be inappropriate for him. Bynum posits that the State jumbled all the evidence it proffered and never discussed the conditions of pretrial release other than in conclusory fashion.

¶ 22    It is indisputable that, when arguing for Bynum to be detained while awaiting trial during the detention hearing, the State did not reference the third factor. In fact, the State's only reference to the factor was in a preprinted assertion in its verified petition for pretrial detention. Nevertheless, the evidence the State proffered during the hearing provided a sufficient basis for the circuit court to make a finding that no condition or combination of conditions could mitigate the threat Bynum posed such that the court could find the State met its burden. In turn, through the court's oral and written findings, which we may consider in tandem (see *People v. Vance*, 2024 IL App (1st) 232503, ¶¶ 29, 32), it concluded that no condition or combination of conditions could mitigate the threat Bynum posed because he had been incarcerated previously on serious felony offenses, which did not deter his alleged behavior in the instant case. See 725 ILCS 5/110-5(a)(3) (West 2022) (outlining the various factors the circuit court should consider in determining the conditions, if any, of pretrial release including "the history and characteristics of the defendant"). The court's conclusion was exemplified by its concern that, if it ordered Bynum to be on electronic monitoring, he could simply remove the device from his body and render the condition futile. The fact that Bynum has four previous convictions, including one for resisting a peace officer, demonstrates a

---

[1] Under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023), unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes."

clear disregard of the law. See *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 25 (finding the circuit "court could reasonably infer that *** conditions of release would be insufficient" for the defendant where he was charged with resisting a peace officer, which "show[ed] disrespect toward the law"). Bynum's criminal history demonstrates an inability or unwillingness to be a law-abiding citizen such that the court's concern about a similar disregard of pretrial release conditions was founded upon reason and logic. See *People v. Davis*, 2023 IL App (1st) 231856, ¶ 31 (observing that the "[d]efendant's history showed an unwillingness to follow the rules set out by law enforcement authorities" and given the State's proffer about his criminal history, the circuit court did not err "in concluding that [he] presented a threat to the community that no conditions of pretrial release could mitigate").

¶ 23 In arguing that the State failed to meet its burden on the third element, Bynum heavily relies upon *People v. White*, 2024 IL App (1st) 232245, ¶ 27 and *Stock*, 2023 IL App (1st) 231753, ¶ 21, where this court found that the circuit court erred in finding the State met its burden on the third element. In *White*, 2024 IL App (1st) 232245, ¶¶ 8, 13, the defendant had no previous criminal convictions, and Pretrial Services recommended that he be released with pretrial monitoring while awaiting trial. Similarly, in *Stock*, 2023 IL App (1st) 231753, ¶¶ 7, 19, the defendant had no criminal history and had the lowest possible scores from Pretrial Services on whether he would commit new criminal activity or fail to appear. Moreover, the circuit court's order and its oral pronouncement were devoid of any reasoning as to why less restrictive means would be insufficient to mitigate the threat the defendant posed. *Id.* ¶ 20.

¶ 24 In the present case, unlike in *White* and *Stock*, Bynum has an extensive criminal history, including multiple convictions involving weapons, and the record is devoid of the Pretrial Services assessment score—though we cannot fathom someone with Bynum's background would score low

or be recommended for release. And critically, the circuit court provided detailed reasons as to why less restrictive means would be insufficient to mitigate the threat Bynum posed. As such, the court's finding that the State met its burden to show no condition or combination of conditions could mitigate the real and present threat he posed was reasonable and based on the evidence presented. Consequently, the court did not commit manifest with its finding on the third element.

¶ 25    Where the circuit court did not commit manifest error in finding the State met its burden to show all three elements necessary for Bynum's pretrial detention (see 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022)), its ultimate decision to order him detained pretrial was not arbitrary, fanciful or unreasonable. Consequently, the court did not abuse its discretion in ordering Bynum detained while awaiting trial.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.