2024 IL App (1st) 240259
No. 1-24-0259B
Opinion filed June 28, 2024

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24110508401 |
| | ) | |
| BRIAN CARTER | ) | Honorable |
| | ) | Ankur Srivastava, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    Before the trial court concluded that "nothing *** short of" pretrial detention would suffice, it should have considered other statutory conditions. When ordering Brian Carter detained, the trial court erred by overlooking several enumerated conditions besides detention under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We reverse and remand for a new hearing on the State's petition to detain.

¶ 2                                    BACKGROUND

¶ 3    Brian Carter stood accused of aggravated battery with a firearm and aggravated discharge of a firearm for allegedly shooting into a car traveling alongside him. The State sought to deny him pretrial release.

¶ 4                                    Hearing

¶ 5    The State provided an account from the driver of a car that had quickly merged into Carter's lane to avoid a parked truck, after which Carter tailgated the driver and his passenger. Through the rearview mirror, the passenger saw Carter appear to wave a gun. Carter soon pulled into oncoming traffic and shot at the driver's side, shattering the rear passenger window. The passenger called 911 and narrated as the driver began to chase Carter. When the driver caught up, Carter again pulled into oncoming traffic and shot. A bullet "grazed" the driver's right knee and struck the passenger's left knee.

¶ 6    According to the State's proffer, officers learned Carter was driving his mother's leased car. His mother reported Carter had told her about the incident. Officers Mirandized (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and interrogated Carter. He acknowledged the shooting and described fearing for his life as the other driver tried to push his car into oncoming traffic. Carter's first shot was a warning. He fired again after seeing a hand emerge from the other car. Carter drove to work following the incident. Officers located two shell casings in his mother's car.

¶ 7    Carter had no criminal history or traffic citations. He had a firearm-owner identification card but no concealed-carry license. Pretrial services assigned Carter's "new criminal activity" and "failure to appear" scores one (out of six) and recommended pretrial monitoring. Carter's counsel highlighted his circumstances, including that Carter was 30 years old; was employed part-time as

a "stagehand/driver"; lived with his wife, three children, and mother; and drove his children to school daily. He also looked after his mother, who was battling late-stage cancer.

¶ 8    The trial court ordered Carter's pretrial detention, finding the three elements of section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) satisfied.

¶ 9    As for the first two elements, the trial court determined that (i) the proof was evident or the presumption great that Carter committed the detention-eligible offense, namely, aggravated discharge of a firearm, and (ii) Carter posed a real and present threat to the safety of the people he shot as well as others, like those on the road and sidewalk near the rolling shooting. See *id.* § 110-6.1(e)(1)-(2).

¶ 10    The third element, whether any condition or combination of conditions can mitigate the real and present threat, was a "harder question" for the trial court. See *id.* § 110-6.1(e)(3). Carter posed "a good person" who found himself "now in a really bad situation." The trial court stated:

> "[T]he types of conditions I can impose don't stop this kind of thing from happening. If I put you on a curfew, if I put you on electronic monitoring, you still have the ability to drive around and do the things you need to do to live, as you should. *** If you're out doing those things, the conditions I can impose would not stop something like this from happening again. There is really nothing I could do short of detaining you to make sure that this type of incident does not occur again. And what's concerning to me is that it's unprovoked."

¶ 11    In a written order, the trial court added that the proffered facts "suggest[ed] a lack of impulse control" and "[t]he conditions this court could impose would not prevent an incident like this from occurring again."

¶ 12    Carter filed a timely notice of appeal from the pretrial detention order. He argues the trial court erred by finding against him on the third element.

¶ 13                              ANALYSIS

¶ 14    We review the trial court's order under a bifurcated standard of review. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. But see *People v. Morgan*, 2024 IL App (4th) 240103, ¶¶ 12-35 (canvassing appellate court split on standard of review), *appeal allowed*, No. 130626 (Ill. Jun. 11, 2024). We reverse findings against the manifest weight of the evidence and review the trial court's ultimate decision for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 15    Illinois law now presumes defendants are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). The parties' dispute concerns the third element. Carter contends the proffered facts about the alleged offenses fail to prove that no condition or combination of conditions can mitigate the real and present threat he poses. See *People v. White*, 2024 IL App (1st) 232245, ¶ 21 (rejecting contention that reciting language of the Code satisfies burden to prove third element). In opposition, the State argues that neither home confinement nor electronic monitoring would protect the public from Carter's alleged anger and impulsivity.

¶ 16    The parties, however, offer an incomplete analysis, as did the trial court. The trial court erred by (i) coupling its analysis of the third element to the alleged offenses and (ii) overlooking conditions short of detention, which could mitigate any real and present threat Carter posed.

¶ 17    We begin with section 110-5(a). It lists several factors a trial court must consider when "determining which conditions of pretrial release, if any, will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). Next, section 110-5(c) cross-

references section 110-10(a) and (b). *Id.* §§ 110-5(c), 110-10(a)-(b). Those sections particularize mandatory conditions of pretrial release (*id.* § 110-10(a)) and provide a nonexhaustive list of discretionary conditions, but only when they "include the least restrictive means and [are] individualized" (*id.* § 110-10(b)).

¶ 18    First, the trial court zeroed in on Carter's "really bad situation," that is, the alleged offenses. True, what Carter sketches as allegations, the State fairly presents as possible evidence of anger and impulsivity. Even so, the context of the alleged offenses is relevant—context shapes facts, after all—but also inconclusive. *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 17-18 (bare allegations relevant but insufficient to satisfy third element). Nothing in the record indicates that the trial court considered the alleged offenses along with other evidence, such as Carter's lack of criminal history and, until that point, lawful possession of a weapon. When weighing whether to order pretrial detention, the trial court must assess all of the evidence before it.

¶ 19    Next, when ordering Carter's pretrial detention, the trial court fixated on electronic monitoring and home detention, conditions appearing in a single subsection (725 ILCS 5/110-5(b)(5) (West 2022)). This narrow focus disregarded the other enumerated conditions, for example, that Carter "[r]efrain from possessing a firearm or other dangerous weapon." *Id.* § 110-10(b)(2). Section 110-10(b)(9) also broadly authorizes courts to impose "other reasonable conditions"—perhaps, a prohibition from driving while on pretrial prelease or confiscating his weapons and FOID card—if those conditions are individualized and the least restrictive means possible to ensure defendant's appearance in court and compliance with pretrial release rules, court procedures, and criminal statutes. *Id.* § 110-10(b)(9).

¶ 20   Thus, the trial court improperly applied its discretion under the Code. See *People v. Williams*, 188 Ill. 2d 365, 369 (1999) ("[A] trial court must exercise its discretion within the bounds of the law."). The Code offers far more options. *People v. Herrera*, 2023 IL App (1st) 231801, ¶ 33-37 (remanding for new hearing where trial court failed to consider "full constellation of conditions at its disposal").

¶ 21   Before deciding that nothing short of pretrial detention will suffice, the trial court must consider other statutory conditions, which did not occur here. See *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19 (unreasonable detention orders reversible as abuse of discretion and against manifest weight). Accordingly, we reverse.

¶ 22                                    CONCLUSION

¶ 23   We express no opinion on whether the trial court should order Carter detained. On remand, the trial court should consider this question anew, consistent with our decision.

¶ 24   Reversed and remanded.

*People v. Carter*, 2024 IL App (1st) 240259

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24110508401; the Hon. Ankur Srivastava, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Emily Motin, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Lynnette Cusack, Assistant State's Attorney, of counsel), for the People. |