2024 IL App (1st) 240202-U

No. 1-24-0202B

Order filed April 12, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 4224 |
| | ) | |
| MALIK BOYD, | ) | Honorable |
| | ) | James B. Novy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not abuse its discretion in ordering defendant detained pretrial.

¶ 2    In March 2022, defendant Malik Boyd was charged with, *inter alia*, first-degree murder and denied bail. Thereafter, Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act), became effective and amended Article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), thereby abolishing monetary bail in Illinois and changing the framework of pretrial release. Due to the Act, Boyd filed

a petition for pretrial release, and the State filed its own verified petition for pretrial detention. Following a hearing, the circuit court denied Boyd's petition to grant pretrial release and granted the State's petition for pretrial detention. Boyd now appeals those rulings and contends that the court erred by detaining him pretrial. For the reasons that follow, we affirm.

¶ 3                               I. BACKGROUND

¶ 4      In March 2022, Boyd was arrested and charged with three counts of first-degree murder, one count of attempted aggravated vehicular hijacking and one count of attempted armed robbery. Following a bond hearing, the circuit court held him on no bail and denied him pretrial release. On September 18, 2023, the Act became effective. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52.

¶ 5      On January 5, 2024, Boyd filed a petition to grant pretrial release pursuant to the Act, asserting he was 21 years old with no prior felony convictions and that he could be released on electronic monitoring to live with his father. Four days later, the State filed a verified petition for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), positing that the proof was evident, or the presumption great, that Boyd committed first-degree murder, a detainable offense under the Act. The State further posited that Boyd posed a real and present threat to the safety of the community and that no condition or combination of conditions of release could mitigate that risk.

¶ 6      On the same day the State filed its petition, the circuit court held a detention hearing. Defense counsel asserted that, although companions of Boyd exited a vehicle driven by him and were involved in a shooting that killed an individual, there was no evidence he left the vehicle or had a firearm. Counsel therefore stated that there was no evidence Boyd had an active role in the shooting. As such, counsel argued the proof was not evident, and the presumption not great, that Boyd committed a first-degree murder even under a theory of accountability. Counsel highlighted

Boyd's age, that he had no prior felony convictions and argued there was no articulable threat of him to either a specific person or the community. Counsel contended that he should be released pretrial with house arrest or electronic monitoring.

¶ 7     The State recounted the facts of the alleged first-degree murder, where in April 2020, the victim, a valid firearm owner's identification card holder, walked his fiancée to her vehicle early in the morning. The victim's fiancée entered her vehicle, and as the victim was saying goodbye to her, a white sedan driven by Boyd came up behind them. Three other individuals jumped out of the sedan, and one of them exchanged gunfire with the victim, which resulted in him being shot and killed. Surveillance video captured the white sedan, which had its front license plate folded up, leaving the scene and arriving at a nearby hospital three minutes later. According to the State, through a photograph, the fiancée identified the white sedan from the hospital as the one being involved in the murder. The State proffered that the video evidence further showed Boyd exiting the driver's seat wearing a black shirt with a large "V" on it. Another occupant of the white sedan exited and went into the hospital seeking treatment for his own gunshot wound. Thereafter, Boyd and the other two individuals drove away from the hospital. Later that same day, Boyd was shot in another incident. Additional surveillance video depicted him arriving at another hospital in the same white sedan with its front license plate folded up. Boyd exited the sedan wearing the same clothing from before and sought treatment at the hospital. There, according to the State, Boyd gave his name to hospital personnel. The State also noted that two Chicago police officers identified Boyd. The State further remarked that Boyd was not arrested for the offense until March 2022.

¶ 8     In addition, the State introduced as aggravating evidence that Boyd had been charged in two criminal cases in July 2021, one for aggravated vehicular hijacking and one for aggravated unlawful use of a weapon. The State recounted the facts of those two cases in depth. In the

aggravated vehicular hijacking case, Boyd allegedly pointed a firearm at the victim. In the aggravated unlawful use of a weapon case, in which Boyd initially attempted to flee from the police, he allegedly had possession of a semi-automatic firearm without having been issued a valid firearm owner's identification card or concealed carry license. The State further observed that Boyd had three prior juvenile adjudications for aggravated unlawful use of a weapon, escape and possession of a stolen motor vehicle, all during 2019 and 2020. Given the circumstances of the instant case and Boyd's "significant" and "violent" criminal background, the State argued that no conditions could keep the public safe from him and requested his continued pretrial detention.

¶ 9    Following the parties' arguments, the circuit court orally found that the proof was evident that Boyd committed the alleged offenses and he posed a real and present threat to the safety of both the victim's fiancée, who witnessed the murder, and the community. Additionally, the court concluded that only detention could mitigate that real and present threat. In explaining these findings, the court thereafter observed that, although Boyd's charges were based on accountability, that did not make him legally less responsible. The court also asserted that Boyd's background, including his pending cases and his juvenile adjudications, was "violent" in nature. Consequently, the court orally denied Boyd's petition for pretrial release and implicitly granted the State's petition for pretrial detention.

¶ 10    In the circuit court's written order, it found that the proof was evident, or the presumption great, that Boyd participated in an attempted vehicular hijacking as the driver of a vehicle where a victim was shot by one of his companions. The court also found that Boyd posed a real and present threat to the safety of the victim's fiancée, who witnessed the shooting, if he were released pretrial. Additionally, the court concluded no condition or combination of conditions could mitigate the real and present threat that Boyd posed. The court added that less restrictive conditions would not

avoid that threat because Boyd had two pending cases involving firearms and was the driver of a vehicle in which its occupants were involved in an attempted vehicular hijacking and first-degree murder. The court therefore ordered Boyd detained pretrial.

¶ 11    This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    Boyd contends the circuit court erred in concluding that the State had met its burden of proving all three elements necessary to detain him pretrial under the Act: (1) that the proof was evident, or the presumption great, that he committed an eligible offense; (2) that he posed a real and present threat to the community or a specific person; and (3) that no condition or combination of conditions could mitigate the real and present threat he posed. See 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 14    In the instant case, Boyd was arrested in March 2022 for, *inter alia*, first-degree murder, which was before the September 18, 2023, effective date of the Act (see *Rowe*, 2023 IL 129248, ¶ 52) and has been in custody ever since. Under these circumstances, Boyd had the option to remain in pretrial detention or file a petition to reconsider. See *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶ 14. Boyd chose the latter, triggering section 110-7.5(b)(1) of the Code (725 ILCS 5/110-7.5(b)(1) (West 2022)). Under that section, individuals, like Boyd, who were previously held on no bail and detained pretrial before the Act became effective and had been charged with certain offenses, including first-degree murder, must be given a hearing within 90 days of filing a "motion for reconsideration of pretrial release conditions," *i.e.*, the petition to grant pretrial release that Boyd filed. *Id.* Section 110-7.5(b)(1) of the Code, in turn, references a hearing proceeding under section 110-6.1 of the Code (*id.* § 110-6.1). Although under that section, the court may only deny a defendant pretrial release upon a verified petition by the State (*id.* § 110-6.1(a)), the State filed

one in the instant case in response to Boyd's petition for reconsideration, which was proper. *See Kurzeja*, 2023 IL App (3d) 230434, ¶ 14.

¶ 15 Turning to the pretrial detention hearing under section 110-6.1 of the Code, before conducting such a hearing, all defendants begin with the presumption that they are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). As relevant to Boyd, in order to continue his pretrial detention, the State "bear[ed] the burden of proving by clear and convincing evidence" three elements. *Id.* First, the State had to show "the proof [was] evident or the presumption great" that Boyd committed first-degree murder. *Id.* § 110-6.1(e)(1). Second, the State had to show that he "pose[d] a real and present threat to the safety" of the community or any specific person based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(2). Third, the State had to show that "no condition or combination of conditions *** [could] mitigate (i) the real and present threat to the safety" of the community or any specific person based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(3).

¶ 16 We review the circuit court's determinations on whether the State met its burden on these three elements under the manifest-weight standard. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, the court's ultimate decision to detain a defendant pretrial is reviewed for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. "An abuse of discretion occurs where the [circuit] court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the [circuit] court." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 17    As to the first element, in the State's petition, it alleged that the proof was evident, or the presumption great, Boyd committed first-degree murder. We note in the circuit court's written order, it found that standard met with regard to Boyd participating in an attempted vehicular hijacking as the driver of a vehicle where a victim was shot by one of his companions. However, consistent with the State's petition, it only proffered allegations about first-degree murder and never proffered any allegations about an attempted vehicular hijacking even though Boyd was charged with attempted aggravated vehicular hijacking. But because the court orally found that the proof was evident, or the presumption great, Boyd "committed the offenses alleged," *i.e.*, first-degree murder, and we can review both the court's written order and oral findings in tandem (see *People v. Vance*, 2024 IL App (1st) 232503, ¶¶ 29, 32), its statements encompassed a finding about first-degree murder.

¶ 18    In doing so, the circuit court noted that the allegations against Boyd were based on a theory of accountability. Under a theory of accountability, the "[m]ere presence of a defendant at the scene of a crime does not render one accountable for the offense." *People v. Taylor*, 164 Ill. 2d 131, 140 (1995). But "active participation has never been a requirement for the imposition of criminal guilt under an accountability theory." *Id.* To prove guilt by accountability, the trier of fact may rely upon various factors, including "[p]roof that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime," and that he fled from the scene. *Id.* at 141.

¶ 19    The State's proffer, which was based on statements from the victim's fiancée as well as surveillance footage, sufficiently showed that Boyd drove to the scene with the companion who discharged the fatal gunshot and fled the scene with that companion. In light of these circumstances, the circuit court's finding that the State met its burden to show the proof was

evident, or the presumption great, Boyd committed first-degree murder on a theory of accountability was not arbitrary, unreasonable or not based on the evidence presented. See *id.* at 140-41. Moreover, contrary to Boyd's assertion, there is no indication from our review of the record that the court assumed his guilt. Consequently, the court did not commit manifest error as to the first element.

¶ 20    We now turn to the second element, wherein the circuit court premised its dangerousness finding, through both its written order and oral pronouncements, to the community and the victim's fiancée, in part, based on the fact that Boyd had a violent criminal background. Given the allegations of the instant case, his two pending cases, which involved a violent carjacking and a firearms offense, and his juvenile adjudications, which included another firearms offense, the State undoubtedly demonstrated that Boyd is a clear danger to the community. See 725 ILCS 5/110-6.1(g)(1), (2) (West 2022) (providing that, in determining whether the defendant is a clear danger to the community or a specific person, the circuit court may consider "[t]he nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon" and "[t]he history and characteristics of the defendant"). While there is nothing articulable in the record to indicate that Boyd is a specific danger to the fiancée—though she was present when the shooting occurred—it cannot be credibly argued that the court's finding of dangerousness to the community was arbitrary, unreasonable or not based on the evidence presented. Consequently, the court did not commit manifest error as to the second element.

¶ 21    Lastly, we turn to the third element, where Boyd highlights that his defense counsel argued there were pretrial release conditions that would mitigate the risk he posed, such as house arrest or electronic monitoring. Nevertheless, Boyd posits that the State never made any specific arguments as to why these conditions or any others would not mitigate the risk he posed. Instead, according to

Boyd, the State summarily argued that no conditions of release would mitigate the risk based on the allegations of the instant case and his background.

¶ 22    In the instant case, when arguing for continued pretrial detention, the State posited that no condition or combination of conditions could mitigate the threat Boyd posed given the nature of his first-degree murder charges and his "violent" background, both as an adult through his pending cases and as a juvenile through his adjudications. Consistent with the State's proffer, in the circuit court's written order, it concluded that no condition or combination of conditions could mitigate the threat Boyd posed because he had two pending cases involving firearms and was the driver of a vehicle in which its occupants were involved in an attempted vehicular hijacking and first-degree murder. See 725 ILCS 5/110-5(a)(1), (3) (West 2022) (outlining the various factors the circuit court should consider in determining the conditions, if any, of pretrial release including "the nature and circumstances of the offense charged" and "the history and characteristics of the defendant"). Given the nature and circumstances of the first-degree murder charges and Boyd's background, the court's finding that the State met its burden to show no condition or combination of conditions could mitigate the real and present threat he posed was not arbitrary, unreasonable or not based on the evidence presented.

¶ 23    Still, Boyd heavily relies upon *Stock*, 2023 IL App (1st) 231753, to support his argument that the State failed to meet its burden. However, in *Stock*, the defendant had no criminal history. *Id.* ¶ 19. In the present case, Boyd has an extensive juvenile background and two pending cases, one of which involves an alleged violent carjacking. *Stock* is therefore inapposite. Consequently, the circuit court did not commit manifest error as to the third and final element.

¶ 24    Where the circuit court did not commit manifest error in finding the State met its burden to show all three elements necessary for Boyd's pretrial detention under the Act (see 725 ILCS

5/110-6.1(e)(1)-(3) (West 2022)), its ultimate decision to order him detained pretrial was not arbitrary, fanciful or unreasonable. Consequently, the court did not abuse its discretion in ordering his pretrial detention.

¶ 25                                III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.