2025 IL App (1st) 250298-U

No. 1-25-0298B

Order filed May 28, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 24 CR 10276 |
| v. | ) | |
| | ) | Honorable |
| CHARLES MARTINEZ, | ) | John A. Fairman, II, and |
| | ) | John T. Gallagher, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's detention orders, where the State proved, by clear and convincing evidence, that the proof is evident and the presumption great that defendant committed the offense of attempted first degree murder, that defendant poses a real and present threat to the victim and the community, and that no conditions can mitigate that risk.

¶ 2    Defendant Charles Martinez appeals from the circuit court's order granting the State's petition for detention. Martinez was arrested and charged after Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act

(Act), was enacted.[1] For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4        Martinez was charged with attempted first degree murder and aggravated discharge of a firearm following a September 8, 2024 incident on West Archer Avenue in Summit, Illinois. Following the issuance of an arrest warrant, Martinez was arrested on September 28, 2024.[2]

¶ 5        That same day, the State filed a petition for pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2022)). The petition alleged that Martinez committed an eligible offense (attempted first degree murder) as listed in section 110-6.1(a)(7) of the Code and that he poses "a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case."[3] Specifically, the State relayed that:

> "On 9/8/24 at approximately 4:08 pm, V was walking his dog near 5447 Hunt St in Summit, IL when he went down an alley and encountered 3 individuals, W1, W2, and [Martinez]. V and the individuals engaged in a verbal altercation. During the altercation, [Martinez] threw a punch at V. V dodged the punch and threw [Martinez] to the ground. V then grabbed his dog and began back pedaling to his home with [Martinez] and W-Torres following him. V put his dog inside and came back out. He lunged at [Martinez], and [Martinez] fled the scene.

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023).

[2]The record provides contradictory evidence on his date of arrest, with some filings noting September 29, 2024. Since the State's argument before the court indicated Martinez was arrested on September 28, 2024, we will use this date for consistency.

[3]Although Martinez was also charged with aggravated discharge of a firearm, which is an eligible offense as listed in section 110-6.1(a)(6) of the Code, 725 ILCS 5/110-6.1(a)(6) (West 2022), the State only included the charge of attempted first degree murder on its petition.

A few hours later at approximately 7 pm, V finished walking his dog a second time and was in his home [W. Archer, Summit, IL], when he heard someone knock down the rear door of his apartment building. V's apartment is accessible through a rear door in the alley. V's door has a [*sic*] glass paneling with blinds covering them.

When [Martinez] kicked down the outer door to V's apartment building, the vibrations knocked down V's blinds. V observed [Martinez] inside his apartment building with a second unidentified individual.

V was within feet of [Martinez] and observed [Martinez] unmasked and holding a firearm. V made eye contact with [Martinez] and heard [Martinez] state in summary and not verbatim "what now bitch." V then dove behind a wall and heard approximately 6-7 gunshots. After a pause in the shooting, V looked around the wall and saw [Martinez] and the other offender enter a light color sedan and flee the scene. V was not struck by gunfire. V observed his dog to have a gunshot wound from a bullet grazing.

The police were then dispatched to the scene, and V described the incident. ROs began canvassing the area for video footage. ROs also recovered 2 bullets and a partial bullet from inside V's home. ROs also recovered 5 shell casings from outside the building. ROs observed and documented bullet defects in the wall that V took cover behind.

Upon further investigation, ROs recover security footage near where the shooting happened and observed a light in color Buick traveling toward V's residence prior to the shooting and traveling away from V's residence after the shooting. On 9/12/24, V participated in a photo array. V ID's [*sic*] [Martinez] as the individual he fought and the individual that knocked down his door carrying the gun.

R/Ds canvassed the area where [Martinez] lives and recovered video footage from W-3, a neighbor who lives on [Martinez]'s block. The video footage captures [Martinez]

3

arriving at his residence with a passenger in the same light color Buick approximately 7 mins after the incident. On 9/19/24, W-3, completed a Thompson ID and identified [Martinez] and identified the light in color Buick as the vehicle [Martinez] drives."

The petition further alleged that no combination of conditions could mitigate the risk Martinez poses.

¶ 6        On October 1, 2024, the court held a detention hearing. A pretrial officer testified that Martinez "scored a 4 and a 2," and noted that, should Martinez be released, she would be recommending the maximum conditions.[4]

¶ 7        The State proceeded by proffer, offering information nearly verbatim to that provided on the petition for detention. They noted that Martinez is charged with the detainable offense of attempted murder and that the presumption is great that he committed said offense. The State argued Martinez poses a real and present threat to both the victim and the community, based on the dangerousness of the alleged offense. Specifically, the State highlighted that Martinez sought vengeance for an earlier fight and, enraged, returned to the victim's residence and opened fire. The State noted it was a residential apartment building with multiple other occupants, and that the victim's dog was shot. The State argued that less restrictive conditions would not mitigate the threat that Martinez poses, since electronic monitoring (EM) allows for 40 hours of movement and GPS is "barely a monitoring device," and would not prevent or deter movement. Finally, home confinement would not be appropriate since Martinez would still be "free to roam" outside of the confinement time. The State reiterated that it believes Martinez needs "24/7 constant supervision."

¶ 8        Defense counsel countered that 22-year-old Martinez has no criminal background, and noted his parents were in court in support of him. Martinez, a high school graduate, lives with his

---

[4]The record on appeal indicates that, on his public safety assessment, Martinez scored a four out of six on the "new criminal activity scale" and a two out of six on the "failure to appear scale."

mother, brother, and sister. He was previously employed for over a year as a housekeeper at various hotels. While Martinez is currently unemployed, he would be welcomed back if work were available for him. Counsel stated that while forensic evidence supports that a "bad crime" occurred, there is no evidence indicating Martinez and the victim were acquainted. Counsel argued there was no evidence of the fight that allegedly occurred three hours prior to the shooting, that the police were not provided with identifying characteristics of the shooter, and that the victim did not observe the shooting. Further, counsel reasoned that "there is nothing about shooting into a closed door that indicates specific intent to kill." Accordingly, defense counsel argued the State failed to demonstrate that the proof is evident or the presumption great that Martinez committed the offense. Counsel next argued that Martinez is not a danger to the victim or the community, where there is only one eyewitness account and the court can craft mitigating remedies to protect the victim. Noting the severity of the accusations, counsel urged the court to release Martinez on 24-hour home confinement with certain conditions.

¶ 9        In rebuttal, the State noted that while the victim did observe two individuals outside his home, Martinez was the only person he witnessed holding a firearm.

¶ 10        The court noted its concern that there was an argument and fight preceding the shooting. The court explained that anyone who would force their way into another person's home with a loaded gun in retaliation for a fight, physical or otherwise, was obviously a danger—not only to the victim but the community as a whole. The court highlighted that Martinez was identified through both a photographic array and by the person that was with Martinez, as well as through Martinez's vehicle and camera footage. Consequently, the court found that the State proved by clear and convincing evidence that the proof is evident and the presumption great that Martinez

committed the offense of attempted murder.[5] The court further noted that based on state laws regulating EM and home confinement, no conditions could avoid the real and present danger Martinez poses. Accordingly, Martinez was ordered detained.

¶ 11    The same day, the court entered a one-page order indicating "detention hearing granted—see attached order." The order directed that Martinez was to "remain in custody." The corresponding "attached order" was not provided in the record on appeal. Subsequently, there were three one-page orders entered, each indicating that Martinez was to "remain in custody."

¶ 12    On January 27, 2025, Martinez filed a "Petition for Relief and to Grant Pretrial Release." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Martinez argued that the State failed to meet its burden to prove that (1) the proof is evident and the presumption great that he committed a detainable offense, (2) he poses a real and present threat to the safety of any person(s) or the community, and (3) no conditions can mitigate the threat he poses.

¶ 13    The following day, the court held a hearing on Martinez's motion. Defense counsel provided the court with seven letters in support of Martinez. Counsel noted Martinez's youthful age and his lack of a prior criminal background.[6] He asserted there is not clear and convincing evidence that Martinez committed the offense, where there is only a single eyewitness to the offense and no physical evidence connecting Martinez to the crime. While acknowledging a "[purported] series of Ring camera videos" allegedly depicting Martinez, counsel noted the videos portray only innocent conduct. Next, counsel argued that Martinez is not a danger to any person(s), highlighting the support letters as evidence that there are mitigating factors that would prevent any potential danger. Counsel requested that the court grant Martinez's petition and allow him to reside

---

[5]The transcript states "offense of first-degree murder," which we believe is a scrivener's error.

[6]Counsel noted that Martinez is 19 years old. The record indicates that on the day of the hearing, Martinez was 22 years old.

at his mother's home under restrictive EM conditions. Last, counsel contended that prior to the Act, Martinez would have received a bond. Pointing to the purpose of the Act, counsel asked the court to consider not detaining someone who otherwise would have been granted bond.

¶ 14    The State proffered the facts of the instant case consistent with their October 1, 2024, proffer but included an explanation that the identity of witnesses Torres and Plascencia[7] (brothers-in-law) was obtained from a LEADS inquiry into the silver Honda captured on security footage. During a conversation with police officers, the witnesses related the incident but did not state Martinez was present. Additionally, the State referenced recovered security footage depicting Martinez and Torres following the victim to his residence, and separate footage in which Plascencia's Honda is parked in the alley where the 4 p.m. fight took place. Martinez, Torres, and Plascencia are standing next to the Honda in the video. Yet another video from a different camera depicted a light-colored Buick traveling to the victim's residence prior to the shooting and away from the victim's residence following the incident. Through a LEADS inquiry into the Buick, officers learned that Martinez was the registered owner of the vehicle. The victim initially viewed a photographic array that included Plascencia and various "fillers," and he selected one of the "filler" photographs. After police officers learned of Martinez's identity, they performed a second array, from which the victim identified the shooter as Martinez. The officers then recovered additional security footage from the victim's neighbor, which depicted Martinez's Buick driving by the victim's residence just minutes after the incident. The neighbor identified Martinez and identified the Buick as Martinez's car.

¶ 15    The State then explained that the Posen Police Department was on routine patrol on September 28, 2024, when they observed Martinez inside a vehicle. When officers ran the license

---

[7]Neither witness's first name is referenced in the record.

plate of the vehicle, they learned it had been reported stolen. The officers conducted a traffic stop and placed Martinez and others in custody. Martinez is charged with criminal trespass to vehicle in connection with that arrest. Other than the pending charges, Martinez has no criminal background. The State requested the court continue Martinez's pretrial detention "based on the egregious facts of this case." Defense counsel argued the photographic array should not be relied upon, due to its prejudicial nature.

¶ 16        The court noted in its oral ruling that the offense was extremely violent and dangerous. It additionally found that the State met its burden by clear and convincing evidence that Martinez was the perpetrator. In denying Martinez's motion, the court found that no conditions beyond detention can mitigate the real and present threat Martinez poses. There is a one-page order in the record which notes that Martinez is detained and is to "remain in custody."

¶ 17        Martinez filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), listing October 1, 2024 and January 28, 2025 as the "date(s) of hearing(s) regarding pretrial release."

¶ 18                                    II. ANALYSIS

¶ 19        Martinez did not file a memorandum with this court, choosing instead to stand on the arguments he made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support). Thus, on appeal, we are limited to the arguments made in Martinez's motion. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) (upon appeal, any issue not raised in the motion for relief shall be deemed waived).

¶ 20        Martinez claims the court should not have granted the State's petition following his October 1, 2024 detention hearing because: (1) the State failed to meet its burden to prove that the proof is evident and the presumption great that Martinez committed the charged offense, (2) the

State failed to prove Martinez poses a real and present threat to the safety of any person(s) or the community, and (3) the State failed to prove that no conditions can mitigate that threat.

¶ 21    The State filed a responsive memorandum, arguing that the trial court properly denied pretrial release where the specific, articulable facts of this case demonstrate that Martinez committed a detainable offense, that he poses a real and present threat, and that there are no conditions that could mitigate said threat.

¶ 22    "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 *et seq*. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id*. The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022).

¶ 23    It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 24    If the court determines that the State has met its burden and the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying

pretrial release. *Id*. § 6.1(h)(1).[8] If the court finds that detention is not appropriate, it can impose additional conditions if it determines such conditions:

> "are necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts." 725 ILCS 5/110-10(b) (West 2022).

¶ 25    Should a defendant wish to appeal a detention order, they "shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). This motion allows the defendant to ask the trial court to reconsider its prior denial of pretrial release. *People v. Lanier*, 2025 IL App (1st) 242603, ¶ 1. "The trial court shall promptly hear and decide the motion for relief." Ill. S. Ct. R. 604(h)(2). "[A] proper Rule 604(h)(2) hearing *** would consist of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29; see *People v. Badie*, 2025 IL App (3d) 250033, ¶ 27.

¶ 26    In his notice of appeal, Martinez lists both October 1, 2024 (original detention hearing) and January 28, 2025 (hearing on the motion for relief) as the "date(s) of hearing(s) regarding pretrial release" from which he is appealing. A review of the record reveals that the January 28, 2025 hearing was more akin to a full detention hearing rather than a proper Rule 604(h)(2) hearing, but

---

[8]Here, the trial court issued both an oral ruling and a written order; however, Martinez failed to include the written order in the record on appeal. Where our review of the detention proceeding is *de novo*, *People v. Morgan*, 2025 IL 130626, ¶ 51, this omission does not affect our review.

"the error was harmless because our determination would be the same even if we exclude the content of that second hearing." *Williams*, 2024 IL App (1st) 241013, ¶ 29.

¶ 27    Pursuant to our supreme court's recent decision in *People v. Morgan*, 2025 IL 130626, ¶¶ 51-54, when the parties to a pretrial detention hearing proceed solely on the basis of proffer and no live testimony is presented, " 'the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature.' " *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 18 (quoting *People v. Morgan*, 2025 IL 130626, ¶ 54). *De novo* review "means that the reviewing court performs the same analysis a trial judge would perform." *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18.

¶ 28    Accordingly, we must first evaluate whether the State established "the proof is evident and the presumption great" that defendant committed a detainable offense. Martinez was charged with attempted first degree murder, 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022), a detainable offense under section 110-6.1(a)(7) of the Code. 725 ILCS 5/110-6.1(a)(7) (West 2022). Martinez does not dispute that he is charged with a detainable offense. Rather, he argues that the state failed to meet its burden, "where the State's case rests entirely upon the testimony of a single eye-witness who has never met Martinez on the date of the incident or before." Further, he points to the fact that there is no physical evidence linking him to the offense and contends there is no video surveillance capturing his image in the vicinity of the shooting. These contentions are unavailing.

¶ 29    A defendant commits attempted first degree murder when (1) they perform an act constituting a substantial step toward the commission of first degree murder, and (2) they possess the specific intent to kill. *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 39. Here, the State proffered evidence that the victim was walking his dog when Martinez and others engaged him in a verbal and physical altercation. Martinez and Torres then followed the victim back to his

residence but subsequently left when the victim exited his apartment and lunged at Martinez. Three hours later, Martinez returned to the victim's residence and forcefully broke the door to the victim's apartment building. When Martinez kicked down the outer door, the vibrations knocked down the victim's blinds, allowing him to view Martinez, who was within feet of him. Martinez walked up to the victim's apartment door, brandishing a firearm, and stated to the victim through the glass paneling, "what now, bitch." Martinez then fired six to seven shots directly through the victim's door. While the victim was not struck by gunfire, his dog suffered a graze wound. When the shooting ended, the victim observed Martinez enter a light-colored sedan and flee the scene.

¶ 30      As to Martinez's contention that there is no forensic evidence linking him to the crime, physical evidence is not required to sustain a conviction (or to demonstrate that the proof is evident and the presumption great that a defendant committed an offense). See *Williams*, 2024 IL App (1st) 241013, ¶ 35 ("[A] circumstantial proffer of what the evidence *will* be can certainly support the trial court's determination here that the proof is evident, or the presumption great, that defendant committed the offense.") (Emphasis in original.). As aforementioned, the quantum of evidence required to detain a defendant pretrial is less than that required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2022). While the victim was the only person who observed the shooting, the testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Hill*, 2023 IL App (1st) 150396 (citing *People v. Smith*, 185 Ill. 2d 532, 541 (1999)). The State proffered evidence that the victim was familiar with Martinez, having verbally and physically interacted with him hours before the shooting. The victim then viewed the unmasked offender, whom he identified as Martinez, through his glass paneled door from mere feet away. Moreover, the State proffered that it recovered surveillance video footage depicting a light-colored Buick traveling toward the victim's residence prior to the shooting and traveling away from the victim's residence shortly after the shooting. Further video

footage was recovered from a neighbor who lives on Martinez's block. The video depicts Martinez arriving at his residence in the same light-colored Buick approximately seven minutes after the shooting. This neighbor identified Martinez and noted that the light-colored Buick is the vehicle Martinez drives.

¶ 31    We note that, at the October 1, 2024, hearing, defense counsel also challenged whether the shooter had the prerequisite intent to commit first degree murder, where "there is nothing about shooting into a closed door that indicates specific intent to kill." We find this argument unconvincing. As aforementioned, the proffered evidence clearly indicated that the victim's apartment door had glass paneling and the victim and offender made eye contact. The offender used a deadly weapon in a deadly manner by firing a handgun through the door knowing the victim was on the other side. "The very fact of firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill." [Internal quotation marks omitted.] *People v. Teague*, 2013 IL App (1st) 110349, ¶ 26 (quoting *People v. Ephraim*, 232 Ill. App. 3d 1097, 1110 (2001)). See, *e.g.*, *People v. Homes*, 274 Ill. App. 3d 612, 623 (1995) (Intent to kill can be proven by evidence of "the firing of a gun at or towards another person with either malice or a total disregard for human life."). Given the record before us, we find that the State's proffers at the hearings established, by clear and convincing evidence, that the proof is evident or the presumption great that Martinez has committed the charged offense.

¶ 32    Next, Martinez argued in his motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of the victim or the community, where he has "no criminal history whatsoever." We disagree.

¶ 33    When making a determination whether a defendant poses a real and present threat to any person(s) or the community, the trial court may consider, but shall not be limited to: (1) the nature and circumstance of the offense charged; (2) the history and characteristics of the defendant;

13

(3) the identity of any persons to whose safety the defendant is believed to pose a threat, and the nature of that threat; (4) any statements made by the defendant; (5) the defendant's age and physical condition; (6) the victim's age and physical condition; (7) whether the defendant is known to possess any weapons; (8) the defendant's prior criminal history; and (9) any other factors deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior. 725 ILCS 5/110-6.1(g)(1-9) (West 2022).

¶ 34       As detailed above, the nature and circumstances of the charged offense included extreme violence. Though the proffered evidence demonstrated that Martinez had no criminal history and resided with his mother and siblings, Martinez brazenly retaliated against the victim following an earlier altercation. There was no evidence to indicate that the victim and Martinez were acquainted prior to the day of the shooting. Nonetheless, after a brief verbal altercation, Martinez escalated the interaction to a physical interaction. When the victim retreated from the conflict, Martinez followed the victim and his dog home. He returned hours later, physically breaking into the victim's apartment building while brandishing a firearm. He walked up to the victim's apartment door, uttered a profanity towards the victim, and then fired six to seven shots directly through the victim's door. These facts support that Martinez has a propensity for violent and assaultive behavior. Moreover, Martinez knows where the victim lives and possessed a dangerous weapon. After considering all the relevant factors, we agree with the circuit court and hold that the State proffered clear and convincing evidence that Martinez poses a real and present threat to both the safety of the victim and the community generally.

¶ 35       Last, Martinez contended in his motion that the State failed to meet its burden of proving that there are no conditions that could mitigate any threat he may pose, where "the court could order conditions, including EM with no movement." We are unconvinced by this argument.

¶ 36    In determining which conditions of pretrial release, if any, will ensure the safety of any person(s) or the community, the trial court shall consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including, *inter alia*: physical and mental condition, family ties, employment, financial resources, criminal history, and community ties; (4) the nature and seriousness of the threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1-5) (West 2022).

¶ 37    The State argued that less restrictive conditions would not mitigate the threat that Martinez poses, since EM allows for 40 hours of movement and GPS is "barely a monitoring device," and would not prevent or deter movement.[9] For the same reason, the State contended home confinement would not be appropriate. Defense counsel countered that the court could craft mitigating remedies to protect the victim.

¶ 38    The State's proffer indicated that Martinez began a verbal altercation with a stranger and gradually escalated that altercation, disregarding the victim's attempt to retreat. Instead, Martinez waited several hours before he pursued the victim at his apartment building, and seeking retaliation, made eye contact with and threatened the victim before brashly firing into the apartment door. While the victim managed to avoid injury, his dog suffered a graze wound from one of the fired bullets. Furthermore, Martinez showed zero regard for the safety of anyone else who might have been in the victim's apartment or any of the other residents in the apartment building. Given these facts, we find that EM, GPS monitoring, and even home confinement would

---

[9]EM is "the monitoring of an inmate, person, or offender with an electronic device both within and outside of their home under the terms and conditions established by the supervising authority." 730 ILCS 5/5-8A-2(A-20) (West 2022). GPS is "a device or system which utilizes the Global Positioning Satellite System for determining the location of a person, inmate or offender." *Id*., (B-10) (West 2022).

not mitigate any threat Martinez poses, based on "the reactive and permissive nature of the program. See 730 ILCS 5/5-8A-4 (West 2022) (supervisor verifies compliance or noncompliance after the fact and the participant is permitted at least two days of movement in the community per week)." *Badie*, 2025 IL App (3d) 250033, ¶ 31. We agree with the State that no condition short of detention would prevent Martinez from having the "ability and opportunity to act on an impulse to engage in violent behavior toward a member of the community and retaliate with deadly force after the individual retreats." Moreover, we are not convinced there is any condition that would prevent Martinez from pursuing and violently attacking the victim again. Accordingly, we find the State met its burden to show that no condition or combination of conditions could adequately mitigate the threat Martinez poses.

¶ 39                                    III. CONCLUSION

¶ 40        For the reasons stated, the circuit court's orders of October 1, 2024, and January 28, 2025, are affirmed.

¶ 41        Affirmed.