2026 IL App (1st) 260145-U

FIRST DIVISION
April 27, 2026

No. 1-26-0145B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 23 CR 10614 |
| | ) | |
| JACOB JOHNSON, | ) | Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm the order of the circuit court of Cook County denying defendant's motion for relief from pretrial detention.

¶ 2    The State charged defendant, Jacob Johnson, with first degree murder and attempt (first degree murder) for shooting two people while they slept in their bed. The circuit court of Cook County ordered defendant to be detained before trial. Defendant filed a motion for relief from pretrial detention, which the trial court denied. For the following reasons, we affirm.

¶ 3                    BACKGROUND

¶ 4    The Chicago Police Department arrested defendant, Jacob Johnson, on September 9, 2023, for the first degree murder of Tyrell Parks and the attempt (first degree murder) of Lakeisha Johnson. On September 12, 2023, prior to the effective date of the Pretrial Fairness

1-26-0145B

Act[1], the circuit court of Cook County ordered defendant to remain in custody without bail. "On

September 18, 2023, the [Pretrial Fairness] Act [(Act)] became effective. See *Rowe v. Raoul*,

2023 IL 129248, ¶ 52." *People v. Boyd*, 2024 IL App (1st) 240202-U, ¶ 4. On July 25, 2024,

defendant filed a Petition to Review Detention Under the Act. On August 5, 2024, (at the hearing

on defendant's petition) the State filed a Petition for Pretrial Detention Hearing. On August 5,

2024, the trial court held a hearing. The defense proffered that Johnson identified defendant and

another man, Walker, as present in her bedroom immediately after she was shot while she and

Parks slept. Police arrested defendant and Walker and placed them in adjacent interview rooms.

While in the interview rooms, Walker spoke to defendant through a window and "said to

[defendant] you have to tell them what you did. You are going to go to the hospital, nothing is

going to happen to you. You have to tell them what you did." The defense also argued that

defendant was not identified by Johnson as the shooter. The defense argued that because of

problems with defendant's later admission to police and the absence of Johnson's identification,

the proof is not evident and presumption is not great that the State can prove that defendant was

the shooter.

¶ 5     The State then proffered that the night before the shooting Parks and defendant got into a

physical altercation and Parks stabbed defendant in the arm. Defendant checked himself out of

the hospital against medical advice and returned to the residence. Both victims were asleep on

the first floor. Johnson awoke to the sound of gunshots and realized she had been shot and saw

that Parks had been shot. Johnson saw defendant in their bedroom and saw defendant "pass an

---

[1]     The provisions of article 110 of the Code are commonly referred to as the Pretrial Fairness Act. *People v. Garcia*, 2025 IL App (1st) 251296-U, ¶ 2.

object to his friend after the gunshots." The two men left the area "with defendant fleeing ***

towards the basement entrance." Police recovered eleven 9-millimeter shell casings from the

bedroom. The State proffered that "defendant later made statements to detectives in which he, in

summary, not verbatim, [said] that he left the hospital, returned to the incident location and shot

the victims while everyone was sleeping." The State also proffered that "a child witness [was]

just tendered today." The State asserted that it "tendered three forensic interview statements, one

of which *** identified the defendant as walking to the victims' bedroom with a gun shortly

before the victims were shot." The record before this court contains a protective order for those

interviews. The State then proffered defendant's criminal history informing the trial court that

defendant has one prior felony conviction for aggravated battery in 2019 for which he received

four years' imprisonment, and defendant has four misdemeanor convictions and five failures to

appear, with July 5, 2022, as the date of the most recent failure to appear.

¶ 6     The trial court concluded that the State had shown by clear and convincing evidence that

the proof is evident and the presumption is great that defendant committed an eligible offense

and that, "based on the actions that were taken on this particular date *** [defendant] poses a

real and present threat to the safety of any person or persons in the community based on the fact

that he further admitted to shooting two individuals while they were asleep multiple times." The

court found, "based on those facts," there is no condition or combination of conditions that

mitigate the real and present threat to the safety of any persons in the community based on the

facts.

¶ 7     On December 1, 2025, defendant filed a Motion for Relief from Pretrial Detention Order.

On December 11, 2025, the trial court held a hearing on defendant's motion. At the hearing, the

defense informed the trial court that it had learned that Johnson called police and initially

reported that Walker shot her, but in a video-recorded statement obtained by the defense since the August 2024 hearing, Johnson stated she did not see who shot her. Johnson stated that "she woke up to being shot" and saw defendant hand something to Walker, then both men left the area. The defense argued that Johnosn was the only actual eyewitness and Johnson "made conflicting statements to the police and does not name [defendant] as the shooter." The defense also argued that defendant had given "an admission to shooting Mr. Parks allegedly in self-defense for being stabbed earlier in the night" by Parks. The defense argued that Walker "was convincing [defendant] basically to take the rap for this." The defense further argued that defendant was not a high school graduate and "had a long history of mental health issues, *et cetera*." The defense asserted that defendant was in and out of hospitals because of behavior issues and a seizure disorder, has cognitive issues "and other mental health issues." The defense stated that defendant has been institutionalized throughout his life. The defense informed the trial court they would be filing a motion to suppress defendant's statement on various grounds including whether defendant "understood what he was saying at the time and why he said it."

¶ 8     The State proffered that Johnson saw defendant pass something to Walker; and Johnson "admittedly does not say that the defendant is the one who shot but the order of operations there makes it very clear that he is." The State proffered that defendant admitted shooting the victims and argued that "at this point the admission does show that there is clear and convincing evidence the defendant did, in fact commit these crimes." The State proffered that defendant told police he shot Johnson "because she failed to prevent the deceased victim from coming after him. This is revenge for the stabbing. It's not self-defense. They're sleeping. It's not right away. It's hours later ***. This is murder and the evidence absolutely supports that now and in future trial."

1-26-0145B

¶ 9     The State informed the trial court that defendant had a "2020 aggravated battery to a peace officer, 2019 aggravated battery to peace officer," both of which "resulted in findings of guilty for four years IDOC concurrent." Defendant also had a separate 2019 aggravated battery to peace officer for which defendant received two years' probation that was "terminated unsatisfactorily likely because of the other cases." Defendant also had four misdemeanors and four bond forfeiture warrants.

¶ 10    Following the hearing, on December 11, 2025, the trial court denied the motion for relief from pretrial detention order. On March 24, 2025, defendant filed a Notice in Lieu of Rule 604(h) Memorandum notifying this court that defendant "elects to stand on the arguments in the Motions for Relief and will not file a Rule 604(h) memorandum." On April 17, 2026, the State filed its Response to Defendant's Appeal from the Order Denying Pretrial Release.

¶ 11    This appeal followed.

¶ 12                                    ANALYSIS

¶ 13    The hearing on defendant's motion for relief from detention was conducted solely by way of proffer with no live testimony. Therefore, we will review the trial court's judgment denying defendant's motion *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54, see *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21. On appeal from an order denying a motion for relief from detention pursuant to Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), "[t]he motion for relief will serve as the argument of the appellant on appeal. The appellant may file, but is not required to file, a memorandum ***. Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7).

¶ 14    "To detain a defendant, the State must file a verified petition requesting the denial of pretrial release, and the circuit court shall hold a hearing on the petition. [Citation.] When

seeking denial of pretrial release, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense ([citation]); (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case ([citation]); and (3)

> no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, \*\*\*, or (ii) the defendant's willful flight." (Internal quotation marks omitted.) *People v. Cousins*, 2025 IL 130866, ¶ 25.

Clear and convincing evidence is " 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' [Citation.]" *People v. Williams*, 2024 IL App (1st) 240341-U, ¶ 13.

¶ 15                                      (1) Eligible Offense

¶ 16     Defendant argues that the evidence is insufficient to support his detention. He argues that the statement he made where he admitted shooting the victims would be inadmissible at trial and the remaining evidence is circumstantial. The State responds defendant's statement is corroborated by other evidence. The State argues that "the circumstantial evidence was sufficient to show that defendant committed the charged offenses" and that defendant's "challenges to his statement and \*\*\* to the reliability and accuracy of Ms. Johnson's identification are issues for trial."

¶ 17    In *People v. Wright*, 2024 IL App (4th) 240187, the appellate court found that, "as the trial court recognized, the evidentiary arguments [that the] defendant raised at the detention hearing needed to be fleshed out in a motion *in limine*." *Id*. ¶ 35. The court found that the matters raised by the defense required "a full hearing devoted to this issue. That far exceeded the scope and purpose of the detention hearing. Accordingly, the court properly declined to make evidentiary rulings at the detention hearing." *Wright*, 2024 IL App (4th) 240187, ¶ 35.

¶ 18    In this case, much like in *Wright*, defendant asked the trial court to disregard portions of the proffer defendant argued are inadmissible—defendant's inculpatory statement to police after Walker allegedly encouraged defendant to confess—and to consider the remaining evidence—Johnson's identification of defendant as being in the room but not as actually having fired the shots—insufficient to satisfy the State's burden. However, while the fact that proof of the charged crime may have been the result of improper interrogation "is relevant in assessing the weight of the evidence against the defendant," a factor that should be considered pursuant to section 110-6.1(f)(6), the Act "is clear that the weight of the evidence *** is merely one part of the calculus in the detention decision." Further, "a defendant may be detained when the evidence clearly indicates he *committed* the offense, even if the overall weight of that evidence could be diminished by possible constitutional defects that may later lead to suppression. Pretrial detention turns on dangerousness and statutory thresholds, and not on the trial-level admissibility affected by suppression of evidence." (Emphasis in original.) *People v. Frye*, 2025 IL App (2d) 250381-U, ¶ 15.

¶ 19    In *People v. Martinez*, 2025 IL App (1st) 250298-U, ¶ 30, the defendant argued that the State failed to meet its burden by clear and convincing evidence "where the State's case rests entirely upon the testimony of a single eye-witness" who did not observe the shooting (because

the victim was hiding behind a door as the defendant shot at him). *Martinez*, 2025 IL App (1st) 250298-U, ¶¶ 8, 28. The defendant also relied on "the fact that there [was] no physical evidence linking him to the offense." *Id.* ¶ 28. This court rejected the defendant's arguments, finding that "the quantum of evidence required to detain a defendant pretrial is less than that required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2022)." *Martinez*, 2025 IL App (1st) 250298-U, ¶ 30. The *Martinez* court also cited *People v. Williams*, 2024 IL App (1st) 241013, ¶ 35, in which this court observed that

> "[the] defendant's argument that the State's proffer was insufficient to show that
> he committed the assault, because the evidence was circumstantial, is not well
> taken. By way of analogy, circumstantial evidence is admissible in criminal cases
> if it is relevant, more probative than prejudicial, and does not violate other
> evidentiary rules. [Citation.] As such, a circumstantial proffer of what the
> evidence *will* be can certainly support the trial court's determination here that the
> proof is evident, or the presumption is great, that defendant committed the
> offense." (Emphasis in original.) *Williams*, 2024 IL App (1st) 241013, ¶ 35.

¶ 20    In this case, we find that there can be no genuine dispute that considering *all* of the State's proffered evidence, including that which may be the subject of a later motion to suppress, the proof is evident or the presumption great that defendant committed the charged offenses. Johnson awoke to being shot and saw defendant standing over her, handing something to Walker. Later, defendant admitted shooting the victims because Parks had stabbed him the night before and Johnson failed to stop him. The trial court was not required to assess the admissibility of defendant's statements at the detention hearing; nor can this court on our *de novo* review of the parties' proffers. *Wright*, 2024 IL App (4th) 240187, ¶ 35, see *People v. Forthenberry*, 2024

IL App (5th) 231002, ¶ 35 ("the defendant may not suppress evidence or a confession at the hearing but may argue that the evidence was obtained unlawfully and the court should assess less weight to that evidence against the defendant" (citing 725 ILCS 5/110-6.1(f)(6) (West 2022))). Even according less weight to defendant's statement, we are not left with a reasonable doubt of the truth of the proposition that the proof is evident or the presumption great that defendant committed the offenses. *Williams*, 2024 IL App (1st) 240341-U, ¶ 13.

¶ 21    Further, considering the absence of any additional adult witnesses, as defendant argued, and without defendant's directly inculpatory statements, and without Johnson testifying that defendant actually fired the gun, we would find the evidence is clear and convincing. "[A] conviction may be sustained on circumstantial evidence alone." *People v. Grayer*, 2023 IL 128871, ¶ 28. Where the evidence presented by the State's proffer is reliable and "leaves no reasonable doubt *** about the truth of the proposition in question," then the State's proffer is "sufficient to show that the proof is evident or the presumption great that [the] defendant" committed the offense, even though "more evidence may be necessary to prove [the defendant's] guilt beyond a reasonable doubt." *People v. Dominguez*, 2025 IL App (2d) 240772-U, ¶ 29.

¶ 22    In this case, based on the State's proffers, with the limitations noted above, we have no reasonable doubt that at minimum, the presumption is great that defendant committed the charged offenses. Therefore, we find, based on our *de novo* review of the evidence, that the State met its burden to establish by clear and convincing evidence that the proof is evident or the presumption great that defendant committed an eligible offense.

¶ 23                          (2) Threat to Persons(s) or Community

¶ 24    "In determining whether a defendant poses a real and present threat to safety, the circuit court may consider a non-exhaustive list of factors, including the nature and circumstances of the

charge; the defendant's prior criminal history; the age and physical condition of the defendant; and whether the defendant is known to possess or have access to weapons." *Williams*, 2024 IL App (1st) 240341-U, ¶ 22 (citing 725 ILCS 5/110-6.1(g) (West 2022)). The State argues that "[t]he facts of this case, defendant firing multiple shots inside a residence while the victims were sleeping causing one person to die and the other person to be paralyzed, combined with defendant's criminal history, demonstrate that defendant poses a threat to the safety of any person or persons or the community." Based on our *de novo* review, we find that several factors listed in section 110-6.1(g) weigh heavily in favor of finding that defendant poses a real and present threat to a person and the community.

¶ 25    The nature and circumstances of the offense are that defendant engaged in a revenge shooting against two sleeping individuals hours after the event occurred firing several gunshots killing one person and possibly paralyzing another—who had not done anything to defendant other than, possibly, fail to stop the deceased victim from stabbing him. This was a crime of extreme violence involving a weapon. 725 ILCS 5/110-6.1(g)(1) (West 2022). Defendant's history is indicative of violent or assaultive behavior. Defendant has prior felony convictions for aggravated battery to police officers. (We do not know the nature of defendant's four prior misdemeanor offenses but regardless, they are evidence that defendant has engaged in criminal behavior on multiple occasions.) 725 ILCS 5/110-6.1(g)(2) (West 2022). Defendant does continue to pose a threat to Johnson against whom he may seek to complete his revenge or to silence as a witness. The proffered evidence is that Johnson is severely injured and therefore she is also now very vulnerable. 725 ILCS 5/110-6.1(g)(3), 110-6.1(g)(6) (West 2022). The proffered evidence is that defendant admitted the shooting and stated he did so out of revenge against one person who did cause defendant serious injury but not with the same level of

violence defendant used, and another simply because she failed to prevent Parks from coming after him. 725 ILCS 5/110-6.1(g)(4) (West 2022). Based on the proffer, defendant is known to possess or to be able to possess a gun. 725 ILCS 5/110-6.1(g)(7) (West 2022). Finally, defendant "now has four separate felony cases" from his conduct while in custody for this offense. 725 ILCS 5/110-6.1(g)(9) (West 2022).

¶ 26    We find that the evidence is clear and convincing that defendant " poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1) (West 2022).

¶ 27                              (3) Conditions of Release

¶ 28    To determine whether any condition or combination of conditions of pretrial release can mitigate the threat defendant poses we must consider the factors set forth in section 110-5 of the Act. *Morgan*, 2025 IL 130626, ¶ 81 n8 (Overstreet, J., specially concurring). "The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2022).

> "In determining which conditions of pretrial release, if any, will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall, on the basis of available information, take into account such matters as:
>
> (1) the nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history, criminal history, and record concerning appearance at court proceedings;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release." 725 ILCS 5/110-5(a) (West 2024).

¶ 29    The State argues that "defendant's complete disregard for rules and the law is shown, not only by his extensive criminal history against law enforcement, but his actions while in jail ***. These facts suggest that defendant will be noncompliant with conditions ***." Based on our *de novo* review, we find that the proffered evidence establishes that there are no conditions less restrictive than confinement that will mitigate the risk defendant poses.

¶ 30    As stated above, the nature and circumstances of the offense are such that there is a risk of serious harm to Johnson as well as the public if defendant continues in his violent behavior, including a risk to law enforcement. 725 ILCS 5/110-5(a)(1) (West 2022). We also find that the evidence against defendant is considerable, even taking into consideration defendant's challenge to the admissibility of his statement to police and the fact Johnson did not actually see defendant pull the trigger 11 times. 725 ILCS 5/110-5(a)(2) (West 2022). Defendant's past conduct,

including his demonstrated history of violent behavior and failure to appear in court, far outweighs his ties to the community. 725 ILCS 5/110-5(a)(3), 110-5(a)(5) (West 2022). Finally, and most importantly, based on the specific and articulable facts of this case, the threat to Johnson and the community is real, present, and very serious. Defendant has admitted shooting the victims in revenge. Now, in addition to his revenge motive, defendant has a motive to eliminate Johnson as a witness. Defendant has proven he has access to guns and his willingness to use them against the most vulnerable of victims. Defendant has proven his inability to control his violent nature, even while detained. 725 ILCS 5/110-5(a)(4) (West 2022). We find, based on defendant's demonstrated inability to comply with rules, that electronic monitoring cannot mitigate the real and present threat that defendant poses and will not "ensure the *** the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2022), *People v. Phelps*, 2025 IL App (1st) 251777-U, ¶ 48 ("The threat to the community by an individual who will arm himself with a firearm and disregard the law is substantial. Defendant's history and characteristics prove that defendant will not refrain from possessing a firearm or comply with the law. The threat defendant poses cannot be effectively mitigated by electronic monitoring, or any condition or combination of conditions of pretrial release.").

¶ 31    Based on our *de novo* review, we find that the State proved by clear and convincing evidence that no less restrictive condition or combination of conditions other than detention could mitigate the threat defendant poses to a person and the community, or reasonably ensure defendant's appearance. 725 ILCS 5/110-6.1(e)(3) (West 2022).

¶ 32    The State satisfied its "burden of proving by clear and convincing evidence: (1) the defendant committed an offense listed in the statute; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable

facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat." *Williams*, 2024 IL App (1st) 240341-U, ¶ 13.

¶ 33                                      CONCLUSION

¶ 34     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35     Affirmed.